BOARD OF EDUCATION v. COMMISSIONERS..

(Filed December 19, 1904).

TAXATION—*Highways—Schools—Poor Persons—Const. N. C., Art. V, secs. 1, 2, 7; Art. II, sec. 5—Acts 1903, chap. 240.*

> Poll taxes collected under a special act of the general assembly for highways cannot be diverted to schools and the support of the poor.

ACTION by the Board of Education of Macon County against the Board of County Commissioners of Macon County, heard by *Judge G. S. Ferguson,* at Fall Term, 1904, of the Superior Court of MACON County.

The plaintiff Board of Education in its complaint alleges that the defendant Board of Commissioners at their regular meeting on the first Monday in June, 1904, levied a tax of $1.58 on each taxable poll in the county for school purposes and thirty cents for the support of the poor. The State had theretofore levied twelve cents on each poll for pensions—all of which aggregated two dollars on the poll, being the constitutional limit. That at the session of 1903 of the General Assembly an act was duly passed authorizing the Commissioners of Macon County to levy a special tax of thirty cents on the one hundred dollars worth of property and ninety cents on each taxable poll for the purpose of working the public roads of said county. That by said act, it was provided that the special taxes levied and collected pursuant to the authority thus conferred should constitute a special fund for working the roads, and that they should not be applied to any other purpose. Chapter 240, Acts 1903. The plaintiff asked that a *mandamus* issue commanding the defendant board to apply the proceeds of the tax levied on the polls by said act to the support of the public schools of Macon County.

The defendant board demurred to the complaint. His Honor *Judge Ferguson* sustained the demurrer and rendered judgment against the plaintiff for cost. Plaintiff excepted and appealed.

*T. J. Johnston,* for the plaintiff.
*Horn & Mann,* for the defendant.

CONNOR, J., after stating the facts. Well prepared and well considered briefs were filed in this case by counsel on each side. They have aided us in considering and deciding the interesting question presented for the first time for decision. The plaintiff's counsel say, "The decision of the case turns upon the question whether a capitation tax levied by the commissioners in pursuance of a special act of the Legislature for a special purpose, as contemplated by Article V, section 6, of the Constitution, must be appropriated in the manner prescribed in section 2 of the same article." The defendant resists the construction contended for by pointing us to section 7 of the same article.

Section 2, Article V, provides that "the proceeds of the State and county capitation tax shall be applied to the purposes of education and the support of the poor," etc.

Section 6 provides that "The taxes levied by the commissioners of the several counties for county purposes shall be levied in like manner with the State taxes and shall never exceed the double of the State tax, except for a special purpose, and with the approval of the General Assembly."

Section 7. "Every act of the General Assembly levying a tax shall state the object to which it is to be applied, and it shall be applied to no other purpose."

The plaintiff contends that by section 2 the proceeds of all capitation tax, whether derived from the general revenue act made to meet the ordinary and necessary expenses of the

State and county government, or from special acts authorizing
the levy of a tax for a special purpose exceeding the constitu-
tional limit, must be applied to the support of the public
schools and the poor.    That section 2 controls the application
of all capitation tax, thus confining the language of section 7
to property tax.    The defendant contends that section 2
should be confined in its application to capitation tax 'levied
pursuant to the requirement of section 1, Article V, to meet
the equation prescribed for ordinary expenses of the State
and county government.    That section 7 controls the appli-
cation of not only all property tax, but all capitation tax
levied pursuant to special laws for a special purpose.    The
defendant suggests that whether this is correct as to all capi-
tation tax, it is certainly so as to all such tax in excess of two
dollars.    It must be conceded that there is an apparent con-
flict between the two sections.    It is our duty to reconcile
them, so that, if possible, both be given force and effect.    It
is said by *Judge Cooley*: "If different portions seem to con-
flict the courts must harmonize them, if practicable, and must
lean in favor of a construction which will render every word
operative rather than one which may make some words idle
and nugatory."    Const. Lim., 92.

Article V of the Constitution has been the subject of much
controversy; the construction and reconciliation of the dif-
ferent sections have given the Court much difficulty.    There
can be no doubt that the restrictions and limitations therein
have seriously embarrassed the Legislature in providing
necessary revenue to meet the demands of a growing, progres-
sive community.    It is impossible to read the many opinions
of the Justices of this Court without being impressed with
this fact.    It would seem that to arrive at satisfactory, or at
least workable, results, the Court has run very close to the
line which separates construction from making the law.    We
may, however, in the light of the decisions treat some ques-

tions as settled. By the express language of Article I, section 5, it is made the duty of the General Assembly to levy a capitation tax on every male inhabitant between the ages of twenty-one and fifty, which shall be equal to the tax on property valued at $300 in cash. That such State and county tax combined shall never exceed two dollars on the poll. *Mr. Justice Rodman,* who was a member of the Constitutional Convention of 1868, at the June Term, 1869, of this Court in *Railroad v. Holden,* 63 N. C., 427, said: "It is too plain to admit of an argument that the intent of this section was to establish an invariable proportion between the poll tax and the property tax, and that as the former is limited to two dollars on the poll, the latter is limited to two dollars on the three hundred dollars worth of property." That with the exceptions pointed out in *Jones v. Comrs.,* 107 N. C., 248, and *Wingate v. Parker,* 136 N. C., 369 (at this term), observance of this equation is essential to the validity of all revenue or taxing laws is shown by the uniform decisions of this Court. *Russell v. Ayer,* 120 N. C., 180, 37 L. R. A., 246. In *Jones v. Comrs., supra,* it was held that the necessity for observing the equation applied to all laws providing for revenues for the ordinary and necessary expenses of the State and county government and all special acts authorizing counties to levy a special tax to meet the necessary expenses— such as building a court-house, a bridge, or improving the roads, etc. It was therefore essential to the validity of the tax of thirty cents on property that a tax of ninety cents on the poll be levied and collected. We then have two provisions in Article V of the Constitution—one requiring "The proceeds of the State and county capitation tax to be applied to the purpose of education," etc., the other declaring that "Every act of the General Assembly levying a tax shall state the special object to which it is to be applied," etc. If sections 1 and 2 are construed together we have an express

direction to the General Assembly to levy on every male in-
habitant between certain ages a capitation tax, with the limit
fixed at the amount of tax levied on property valued at $300,
with the further limit that such capitation tax shall not ex-
ceed two dollars, followed by the provision that the pro-
ceeds of the capitation tax shall be applied, etc.   These two
sections express the purpose to require a capitation tax, to
fix its limits, to establish an equation between such tax and
the property tax, and the application of such capitation tax.·
Section 3 prescribes a rule of uniformity, section 4 deals
with the State indebtedness, etc.   Section 5 prescribes what
property shall be exempt from taxation.   Section 6 provides
for the levy of county taxes.   The very important command
to the Legislature concludes the Article with section 7, that
"Every act of the General Assembly," etc.   Article IX, sec-
tion 2, imposes the duty upon the Legislature to provide by
taxation and otherwise for a general and uniform system of
public schools, etc.   Article XI imposes the duty upon the
General Assembly of providing for the poor, etc.   Adopting
the construction placed upon the Constitution by this Court
in *Jones v. Comrs., supra,* we are constrained to hold that the
act under which the tax to work the roads of Macon County
was authorized necessarily provided for the capitation tax,
· and that its collection is lawful.   We are of the opinion that
in order to give full force and effect to section 7 the entire tax
must be applied to the purpose for which it was levied and
collected.   We think that it would be doing violence to this
section to say that it applied only to taxes levied on property.
It would be a singular result if every tax levied by a county
by permission of the General Assembly to build a court-
house, bridge, or improve the roads should carry with it a poll
tax for an entirely different purpose.   General taxes are
levied for the support of the schools, the rate of which is
fixed with reference to the amount to be received from polls

in accordance with section 1, Article V. It is to be presumed
that this tax, with the added amount from polls, is deemed
by the General Assembly sufficient to meet the needs of the
public schools. A tax is likewise levied in each county for
the support of the poor, and the commissioners may, if they
think proper, appropriate so much as one-fourth of the poll
tax to that purpose. The provisions of section 2 of Article
V are fully met and complied with by confining its applica-
tion to the capitation tax levied for the ordinary expenses of
the State and county. The question, it must be conceded, is
not free from difficulty. . In *Long v. Comrs.,* 76 N. C., 273,
*Rodman, J.,* uses language which the plaintiff insists indi-
cates an opinion different from that which we have expressed.
It does not appear whether the tax levied for repairing the
court-house was by permission of the General Assembly. It
does appear, however, that the entire levy did not exceed the
constitutional limit. The question is not clearly presented.
In *Board of Education v. Comrs.,* 113 N. C., 385, *Avery, J.,*
says: "The language of the Constitution is plain and per-
emptory, and forbids the application of the fund arising from
the tax on polls to any purposes other than to education and
the support of the poor, or of any greater proportion for the
maintenance of the poor than that prescribed in the instru-
ment, *until the levy reaches the limit of two dollars."* The
only question decided in that case was that the Legislature
was authorized to levy a tax for the payment of pensions
under the power granted in Article XI, section 7, and that
it could appropriate so much of the poll tax to that purpose
under the provisions of Article II, section 5, as did not ex-
ceed one-fourth of the whole. The State by general taxation
and by special appropriation provides for the maintenance of
public schools. The Constitution appropriates the net pro-
ceeds of all fines, forfeitures and penalties and the proceeds
of the sale of all public lands, etc. To adopt the construc-

tion of Article VII, section 5, contended for by the plaintiff, we would be compelled to write into the section the words "on property," so that it would read "Every act, etc., levying a tax *on property.*" This the Court should never do. We must construe, and not *make* the Constitution.

To weaken the very essential safeguard against the abuse of the taxing power found in section 7, Article V, would expose the property of the citizen to dangers, which experience has shown to lurk in every form of government, because of the fact that "the power to tax involves the power to destroy." We should be slow to adopt a construction which would carry the capitation tax which must accompany every special tax for necessary purposes into a channel different from that "stated," setting at naught the peremptory command "it shall not be applied to any other purpose." To do so would seriously embarrass the counties in meeting the ever-increasing demands of a progressive people for better roads, bridges and public buildings. It is suggested that until the limit of two dollars is reached the provision of section 2 controls and carries the capitation tax into the school and poor fund. We think it best to decide only the question before us. It is conceded that the limit had been reached in Macon County for general purposes and that the levy authorized by the special act is in excess of the limit. The judgment of his Honor sustaining the demurrer must be

Affirmed.

WALKER and DOUGLAS, JJ., concur in result.