SOUTHERN RAILWAY COMPANY v. BOARD OF COMMIS-
SIONERS OF MECKLENBURG COUNTY.

(Filed 25 May, 1908.)

1. **Taxation—Constitutional Limitations—Equation Between Property
   and Poll Tax—Validity—Practice—Mandamus.**

   *Mandamus* to compel the commissioners of a county to collect
   a sufficient poll tax, under Article V, section 1, of the Constitution
   of North Carolina, is the proper remedy in an action by a tax-
   payer contending that a tax levied does not observe the constitu-
   tional equation between the poll and the property tax.

2. **Taxation—Entire Levy—Valid and Invalid Apportionable—In-
   junction.**

   It is the practice, enforced usually by statute, for the court not
   to enjoin the collection by a board of county commissioners of an
   entire levy of taxes if the portion conceded in a suit by a tax-
   payer to be valid can be separated from the portion alleged to be
   unconstitutional.

3. **Constitutional Law—Statutes—Duty of Courts.**

   The courts of the State will not declare a legislative enactment
   unconstitutional unless it clearly or convincingly appears to them
   to be so.

4. **Constitutional Law—Taxation—Interpretation of Statutes—Con-
   strued as a Whole—Special Tax—Validity.**

   Article V, section 1, of the State Constitution, providing an
   equation between the poll and property tax, and section 6 thereof,
   requiring that "the tax levied by the commissioners of the sev-
   eral counties for county purposes shall never exceed the double
   of the State tax, except for a special purpose and with the special
   approval of the Legislature"; and Article VII, section 7, thereof,
   prescribing the limitations upon the counties, etc., to contract
   debts for other than necessary expenses, should be construed in
   relation to each other, and thereunder a special tax voted by the
   people of a county, specially authorized by the Legislature, is not
   unconstitutional by reason of an increase thereby of the property
   tax over the constitutional equation between the general property
   tax and the poll tax.

5. **Constitutional Law—Poll Tax Not to Exceed $2.**

   The last clause in Article V, section 1, of the State Constitu-
   tion, limiting "the State and county capitation tax combined," so
   as not to exceed $2 on the head, is imperative.

6. Taxation for Special Purpose—County Commissioners—Ministerial Duties—Injunction.

The courts, at the suit of a taxpayer, will not enjoin a tax levy made by a board of county commissioners in pursuance of their ministerial duty, for that they did not wisely exercise their discretion in fixing a greater rate of taxation on the $100 worth of property than was necessary for the purpose of paying the interest on a special indebtedness of the county, when practically all of the other taxpayers of the county have paid the tax in pursuance of the levy and the statutory limit has not been exceeded.

7. Same—Excess Levy, How Applied.

When a tax has been levied for the special purpose of paying the interest on special-tax county bonds it must be exclusively applied to that purpose; and if, by any error in the judgment of the county commissioners, a greater property tax rate has been levied than was necessary, the commissioners have no power to apply the excess to a different use. Should they attempt to do so, an injunction will lie at the suit of a taxpayer.

8. Statutes in Violation of Contracts—Parties—Constitutional Questions, by Whom Raised.

When a taxpayer has not shown that any rights of his in relation to a bond issue by a county have been affected, he cannot avail himself of the contention that a subsequent statute, repealing the statute under the provisions of which the issue was made, violated the obligations of a contract.

ACTION for injunction, heard by *Moore, J.,* 24 March, 1908, by consent, at 'chambers in Asheville, from MECKLENBURG.

The plaintiff seeks to enjoin the collection of certain taxes assessed against its property by the defendant Board of Commissioners of Mecklenburg County, for that, it is alleged, the assessment and levy of said taxes are in contravention of Article V* of the Constitution of the State. The Judge granted a restraining order, with a rule to show cause why an injunction should not be granted to the hearing. On the return' of the rule the plaintiff and defendant filed verified pleadings, and from the averments therein the court found the facts set forth in the opinion, and continued the injunction to the final hearing. Defendant appealed.

*W. B. Rodman* and *A. B. Andrews, Jr.,* for plaintiff.
*Burwell & Cansler* for defendant.

CONNOR, J. For the purpose of disposing of the question which confronts us at the threshold of this controversy, the following facts found by his Honor are sufficient: The defendant board of commissioners, in whom is vested by law the power and duty of assessing and levying county taxes, at its meeting in June, 1907, levied the following taxes upon each $100 worth of all of the real and personal property in said county:

|   |   |   |
|---|---|---|
| 1. | State tax | .21 |
| 2. | Pension tax | .04 |
| 3. | School tax | .18 |
| 4. | County tax | .23⅔ |

.66⅔

At the same time said board levied upon every taxable poll in said county............ $2.00

At the same time said board levied the following taxes upon said property:

| | | |
|---|---|---|
| 1. | For public roads, pursuant to section 8, chapter 50, Laws 1901............ | .10 |
| 2. | For bonds, pursuant to chapter 146, Laws 1889, amended by chapter 2, Laws 1901 ............ | .15 |
| 3. | For convicts, pursuant to chapter 24, section 1355, Revisal............ | .25 |

.50

The tax lists, duly endorsed by the clerk of said board, as required by section 5238, Revisal, were delivered to the defendant M. W. Wallace, Sheriff, and the other defendants, tax collectors of certain districts, as set forth in the complaint. No other poll tax than the $2 was levied. In this respect the

commissioners acted in obedience to the provisions of chapter 840, Laws 1905, which prohibits the poll tax, except for special school tax, to exceed $2. The property of plaintiff in said county is valued at the sum of $2,075,954.28. Plaintiff has paid all of the taxes assessed as aforesaid against its property for the present year, except the assessment for roads, convicts and bonds, aggregating $10,379.77. In respect to · these assessments plaintiff alleges: "That the said assessment for public roads and special for bonds, and convict tax, as complainant is informed and believes, have been authorized to be levied by the various acts of the Legislature of the State of North Carolina, which direct and require the imposing and levying of the tax upon each taxable poll in the county equal to the tax on $300 worth of assessed property valuation, which poll tax provision, the defendant board of county commissioners claims, has been repealed by the provisions of Acts of 1905, ch. 840, which are as follows: ·

" 'Section 1. No city or town in Mecklenburg County shall levy a poll tax in excess of $2, and all provisions to the contrary in the charter of any such municipality are hereby repealed.

" 'Sec. 2. The equation of taxation prescribed in the Constitution applies only to taxation levied for the ordinary purposes of the State and county, and no poll tax shall be levied, except as hereinafter provided, in excess of $2, for State and county purposes combined; and all acts levying or authorizing the levy of taxes for special purposes which contain authority to levy a poll tax in excess of $2 in the aggregate for all purposes are hereby repealed or modified so as to restrict and provide that the poll tax for State and county and special taxes combined shall never exceed $2: *Provided,* that this act shall not be construed to affect and shall not affect the district or any other special school taxes on the poll where they are now required to be levied by law, nor the right to levy and collect the same according to law.'

"8. That the complainant is informed and believes that the said chapter 840 of the Acts of 1905 is unconstitutional and void for the following reasons:

"(*a*) For that it is in conflict with the provisions of Article V, section 1, of the Constitution of the State of North Carolina, in that it does not observe the equation between the tax on $300 worth of property and each taxable poll.

"(*b*) For that, as applied to the bonds issued under the act of the Legislature of North Carolina (Acts 1889, ch. 146), which enters into and is a part of the contract between the County Commissioners of Mecklenburg County and the bond-holders, it is in conflict with the provisions of Article I, section 10, clause 1, of the Constitution of the United States of America, which provides: 'No State  *  *  *  shall pass  *  *  *  law impairing the obligation of contracts.'

"(*c*) For that it is in conflict with the provision of Article XIV of the Amendments to the Constitution of the United States.

"The complainant hereby especially invokes the protection of the before-recited sections of the Constitution of the State of North Carolina and of the Constitution of the United States as fully and completely as the same is guaranteed to their citizens."

Plaintiff refers to the provisions of section 5238, Revisal, which makes the tax list, when properly endorsed by the clerk of the board and delivered to the sheriff, a judgment and execution against the property of the taxpayer. By section 5296 the taxes assessed against railroads are made a lien upon all the property owned by them in this State. Plaintiff further alleges that the lien thus created is a cloud upon its title, which entitles it to maintain the action. Section 2855 provides that, unless a tax or assessment or some part thereof be illegal or invalid, or be levied or assessed for an illegal or unauthorized purpose, no injunction shall be granted, etc. Defendant does not question the right of the plaintiff to invoke

the equitable power of the court or to raise the question presented in its complaint. It has been held by us that injunction is the appropriate remedy for avoiding the enforcement of an illegal or unconstitutional tax. *Purnell v. Page,* 133 N. C., 125. It is not clear that, conceding plaintiff's contention to be correct, it is entitled to enjoin the collection of the tax upon its property which is properly assessed and due. It would seem that the remedy is a *mandamus* to compel the commissioners to levy the poll tax if it is their duty to do so. In *Russell'v. Ayer,* 120 N. C., 180, the General Assembly had failed to levy the poll tax as prescribed by the Constitution. It was held by a majority of the Court, although the view of the dissenting Justice was very forcible, that this failure rendered the entire act invalid. Here the statutes pursuant to which the taxes are levied direct that a poll tax in accordance with section 1, Article V, shall be levied. The commissioners, in obedience to the act of 1905, ch. 840, did not levy the poll tax. The failure to do so did not invalidate the property tax. Assuming that the act of 1905 is invalid, the relief to which plaintiff, in behalf of itself and all other taxpayers, was entitled was a *mandamus* compelling the commissioners to perform a ministerial duty. This would be more in accord with the rights of the taxpayer and the county. It is the practice, enforced usually by statute, for the court not to enjoin the collection of the entire levy if the portion conceded to be valid can be separated from the portion in controversy. We call attention to this for the purpose of suggesting that it is proper to resort to the most efficient remedy which interferes in the smallest degree with the collection of the public revenue. The defendant makes no point in respect to the remedy invoked, and, as the question involved is fairly presented and has been ably and exhaustively argued by counsel, we will examine and decide it. The identical question would be presented if the action was for a *mandamus.* Although the sections of Article V of the Constitution have been in the

148—15

organic law since 1 August, 1868, it is doubtful whether the question raised upon this record has been decided by this Court. Both parties insist that, if not expressly decided, language has been used by the Court in a large number of cases which should control us in disposing of the appeal. They draw, however, radically different conclusions from the opinions and discussions of the Court. As said by *Merrimon, C. J.,* in *Jones v. Commissioners,* 107 N. C., 264, "We know that it has been said, *obiter,* in several cases that the equation and limitation of taxation referred to above must be observed in levying taxes for municipal purposes." So, in regard to the question presented here, we find many expressions in opinions indicating that the equation is imperative and must be observed in levying all taxes, for special as well as general purposes. We also find much indicating the contrary view. In this condition of our decisions it becomes necessary to examine the cases, with the exact facts upon which they are based, cited in the well-prepared briefs of counsel, and endeavor to ascertain what, if any, decisions have been made, and the extent to which they are authoritative declarations of the law. It is evident that the question is regarded as an open one and must be settled upon some permanent basis. The revenue system of the State should, so far as possible, be simple and easily administered. The portions of the Constitution relating to the question in controversy are in Article V, entitled "Revenue and Taxation": "Section 1. The General Assembly shall levy a capitation tax on every male inhabitant of the State over twenty-one and under fifty years of age, which shall be equal on each to the tax on property valued at $300 in cash, * * * and the State and county tax combined shall never exceed $2 on the head." Section 2 applies the State and county capitation tax to the purposes of education and the support of the poor. Sections 3, 4 and 5 have no direct relation to the question under discussion. Section 6: "The taxes levied by the commissioners of the several

counties for county purposes shall be levied in like manner with the State taxes, and shall never exceed the double of the State tax, *except for a special purpose* and with the special approval of the Legislature." In these sections we find the entire scheme or system of taxation on real and personal property and the poll. Article VII, section 7, prescribes the limitation upon the power of counties, cities and towns to. contract debts for other than necessary expenses, and the method of doing so. It is conceded that the State and county tax upon property has been assessed to the full constitutional limit, and that a tax on the poll, as limited by section 1, has likewise been levied. The controversy arises upon the "road," "convict" and "special bond tax" levied upon the property of plaintiff, no corresponding poll tax being levied. If, therefore, as contended by plaintiff, the equation prescribed by section 1, Article V, extends and applies to every special tax for every special purpose, with the special approval of the General Assembly or by the vote of the people, it is manifest that the act of 1905, ch. 840, pursuant to which the commissioners acted, is invalid, and, notwithstanding its prohibition, they must levy the tax on each poll for an amount corresponding to the tax on property. They proceeded upon the correct principle in treating the act as valid. Two questions are open to us: First. Has this Court decided the question, and if so, how? Second. If not, what is the correct interpretation of the Constitution in respect to the question presented upon the record? In reviewing the cases to which our attention is called—and they include all that can be found in our reports—it will be well to keep in mind that, while the language of the sections has not been changed, section 4 of Article V of the Constitution, as ratified (1868), has been eliminated, and thereby section 7 therein has become section 6 of the present Constitution. Section 4, Article V, imposed upon the General Assembly the duty of providing "by appropriate legislation and by adequate taxation for the prompt and regular

payment of the interest on the public debt," etc.   The Jus-
tices of this Court, in *Railroad v. Holden,* 63 N. C., 410,
writing separate opinions, were all of the opinion that the
equation prescribed by section 1 did not apply to taxes levied
for the payment of interest on the public debt, as provided by
section 4.   The only *question decided* by the Court in that
case was that the plaintiff was not a corporate entity and had
no power to demand or take the bonds voted to it by the Gen-
eral Assembly.   The action was for a *mandamus* to compel
the defendant, the Governor, to deliver the bonds.   The relief
was denied for the reason stated.   For reasons obvious to
those acquainted with the history of the State and the peculiar
conditions then existing, each of the Justices wrote an opinion
expressing his views regarding the proper construction of the
different sections of Article V.   The Legislature, then in ses-
sion, had increased and was continuing to increase the public
debt, issuing bonds at a rate which threatened to bankrupt
the State.   One of the Justices had been an able and influ-
ential member of the Convention of 1868, which framed the
Constitution.   The Constitution of 1776 contained no refer-
ence to a poll or capitation tax.   By the amendments of 1835
(Article IV, section 3, Rev. Code) it was provided that the
capitation tax should be equal throughout the State.   This is
the only reference to the subject in the Constitution prior to
1868.   For the first time in our history we find the peculiar
provision in Article V, section 1, the authorship of which has
been attributed to more than one distinguished citizen.   The
Court elected pursuant to the new Constitution held its first
term in January, 1869.   It was at the June Term of the
same year that the case of *Railroad v. Holden* came up.
These facts and others stated in the opinions explain why
such an unusual course in our judicial history was pursued.
*Pearson, C. J.,* was of the opinion that the equation pre-
scribed by section 1 did not apply to taxes levied pursuant to
and for the purposes embraced in section 4 (interest on the

public debt), but did apply to section 5, limiting the power
of the General Assembly to contract new debts until the bonds
of the State were at par, except for the purpose of providing
for a casual deficit or to suppress invasion or insurrection.
After making an analysis of the several sections and explain-
ing their purpose and effect, he copies the language of sec-
tion 4 and says: "It is enough to admit that this tax is to be
independent of the equation, *as in section 7 (6) a tax for a
special purpose, with the special approval of the General
Assembly, may be laid without reference to the equation."*
By the words "it is enough to admit" the Chief Justice was
laying the basis for his argument that it was only for *these
purposes* that the equation did not apply.   He proceeds to
give his reason for refusing to carry this construction into
section 5.

*Mr. Justice Rodman,* who was a member of the Conven-
tion, was of the opinion that it was "too plain to admit of an
argument that the intent of this section (section 1) was to
establish an invariable proportion between the poll tax and the
property tax, and that, as the former is limited to $2 on the
poll, so is the latter to $2 on the $300 valuation of property."
The learned Justice proceeds to give an interesting and in-
structive explanation of the reasons which prompted the adop-
tion of the scheme or system of taxation, with its checks and
counterchecks, concluding: "This proportion and this limit
apply equally to all State taxes whatever, but not with equal
force.   As to some it is absolutely imperative, and a tax laid
contrary to its provisions would be void.   As to others, from
the nature of the objects of the tax and from the provisions of
the Constitution, it seems to me to be merely directory; that
is to say, addressed to the discretion of the Legislature and
to be regarded if consistent with the great objects of the Con-
stitution, but if these cannot be attained within the limit and
proportion prescribed, then to be disregarded.   And of this
possibility the Legislature must necessarily be the exclusive

judge." The learned Justice proceeds to state the exceptions and give his reasons therefor, saying: "When we consider the uncertainty which must necessarily have existed as to whether taxation within the limits prescribed by section 1 would suffice for these cherished purposes (payment of the interest on the public debt), and the tax to effect them is to be laid on property alone, thereby entirely disregarding the proportion established by section 1 between property and poll, we are forced to the conclusion that section 4 was intended to be in all respects independent of section 1, if it should be found necessary to render it so in order to give it effect." In respect to section 5 he says: "I am therefore of the opinion that the limitation of taxation prescribed by section 1 is not imperative as respects taxes laid for the purposes contemplated in section 5; that it must of necessity be construed as only directory or monitory to the Legislature, and that its observance cannot be enforced by the courts." The closing sentences of *Judge Rodman* manifest a recognition on his part that at the threshold of the "new order" unexpected difficulties and conditions were rendering ineffectual the plan, which he refers to as "being original," for limiting the taxing power. He concedes that the construction placed by him on the work of the Convention "may possibly be unsatisfactory to two classes of persons." It would seem from his language that, having repudiated the war debt and hoping for "wise and patriotic legislation," he believed that the State and county expenses could be met by a levy of $2 on each $300 of valuation of property and $2 on the poll. It is interesting to read his well-considered words, in the light of the history of the succeeding years. *Mr. Justice Reade* says: "The first object of the Convention, in the fifth article of the Constitution, was to provide for the *ordinary* and *current* expenses of the government. That is done in sections 1, 2 and 3. And *for that purpose* the tax is limited to $2 on the poll and the same amount on $300 worth of property." He does not refer

directly to the question under discussion.   *Mr. Justice Dick* does not discuss the question in a way to throw any light upon the subject, except to say: "The object of the Convention, in Article V, was to provide a system of general taxation for the ordinary expenses of the government, which is to operate with a just equality upon the citizens and property of the country. The capitation tax is limited to $2 on the head, and for the purposes of *general* taxation the $300 worth of property cannot exceed that amount.   *   *   *   If it was intended that the special taxes mentioned in sections 4 and 5 were to be restricted by the equation established in section 1, then we must believe that the Convention either greatly overestimated the sources of taxation or was not honest in its pledges" regarding the public debt.   He was of the opinion that the equation did not apply to section 4 or section 5.   *Mr. Justice Settle* was of the opinion that the "equation of taxation" applied only to the ordinary expenses of the State government.   Having discarded the equation of taxation for limited purposes, he says: "I must go where the principle carries me," holding that the equation did not apply to either section 4 or section 5.   It will be noted that *Judge Settle* was the youngest member of the Court.   He concludes: "I believe there is no diversity of opinion as to the power of the county to levy taxes for county purposes.   I will not repeat the position, as it is stated in the opinion of the Chief Justice and *Justices Reade* and *Dick.*"   We have endeavored to analyze the views of the members of the Court expressed in this case. They were all eminent for learning and powers of reasoning, and were in accord with the dominant thought of the Convention which framed the Constitution.   Their opinions in this case were frequently referred to by themselves in other cases, and, while not authoritative, they have been regarded as the basis of the later interpretations of these sections of the Constitution.   From an analysis we think that certain general conclusions may be drawn.   All of the Justices except *Jus-*

*tice Rodman* regarded the limitation and equation in section 1
as applicable to the taxes levied for general State and county
purposes.    *Judge Rodman* was strongly impressed· with the
opinion that section 1 applied to all taxes, but conceded that
it was impracticable to reconcile this view with the enforce-
ment of the declaration and demands regarding the public
debt, and adopted a "middle ground" in regard to section 5.
*Judge Settle* expressed by the last words in his opinion the
opinion of the Chief Justice in regard to the county taxes, as
concurred in by *Judges Reade* and *Dick.*    We have quoted
the exact language of the Chief Justice in this respect.    While
it is conceded by all that nothing in this respect is *decided,* we
think that there is a clear recognition of the necessity of
restricting the limitation and equation prescribed by section 1.
It would seem that· the process of reasoning which excludes
the equation from taxes levied under sections 4 and 5 would
lead to the same result in respect to taxes levied by counties
"for special purposes, with the special approval of the Gen-
eral Assembly."    If the limitation and equation apply only
to ·general taxes levied for the necessary current expenses of
the State and county government, and not to special taxes
levied pursuant to sections 4 and 5, why should not the exclu-
sion extend to taxes levied by counties "for special purposes,
with the special approval of the General Assembly"?    As we
have seen, *Judge Pearson* associated taxes levied pursuant to
section 4 and section 7 (6) for special county purposes, etc.,
with those which might "be levied without reference to the
equation."

It will be observed that no provision is made for the pay-
ment of county indebtedness contracted prior to 1868.    Prior
to 1861 but few counties had contracted debts.    By section
13, Article VII, the debts contracted by counties during the
Civil War were repudiated and their payment prohibited.
Either the members of the Convention thought that the out-
standing county debts could be paid by levying taxes within

the limitation or that the term "public debt" used in section 4 included county debts.   Between 1865 and 1868 the counties had but little credit and contracted but little indebtedness. It may be that it was supposed that the last clause of section 7 (6) would enable the counties to provide for their debts by "special taxes for a special purpose."   However this may be, for reasons now manifest, the necessity for providing for such indebtedness was soon presented, and the Court found it necessary to make another exception to the limitation and equation prescribed by section 1.   In *Haughton v. Commissioners,* 70 N. C., 466, *Justice Reade* says the limitation upon the power of the counties to levy taxes "was not intended to apply to taxes levied to pay debts existing at the time of the adoption of the Constitution; and if it had been so intended, it would have been in conflict with the Constitution of the United States as impairing the obligation of contracts."   The commissioners had levied a tax in excess of the limitation upon property and the poll to pay existing indebtedness.   The same ruling was made in *Simmons v. Wilson,* 66 N. C., 336.   In *Street v. Commissioners,* 70 N. C., 644, it appeared that the county of Craven had contracted a debt in 1854 for the purpose of aiding in the construction of the Atlantic and North Carolina Railroad.   To provide for the interest the commissioners levied a tax in excess of the limitation and disregarded the equation between the property and the poll tax. In disposing of the objection urged against this tax *Reade, J.,* says: "That objection is well taken if the equation of taxation applies to taxes levied for the payment of debts existing at the adoption of the Constitution.   But in *Railroad v. Holden* it was held by all of the Justices that the equation did not apply to taxes to pay the public debt existing at the adoption of the Constitution *or for special county purposes.*"   This language was concurred in by the unanimous Court, having the same *personnel* as when the first case was decided, with the exception of *Judge Bynum,* who had succeeded *Judge*

*Dick.* In *Mauney v. Commissioners,* 71 N. C., 486, the *point* presented by the order made by *Judge Buxton,* and decided, was that for debts contracted prior to 1868 the commissioners must provide by taxation, without regard to the limitation, while for "new debts" they must have the approval of the General Assembly to exceed the limitation. There was no reference in the order to the equation. *Settle, J.,* disposed of the case in a few lines, saying: "We concur in his Honor's views as to the constitutional limitation and equation to be applied to the different debts." As we have said, there is no reference to the equation by *Judge Buxton.* In *Trull v. Commissioners,* 72 N. C., 389, the same language is used, citing *Street's case* and *Mauney's case, supra.* There was no act of the Legislature approving the tax in excess of the limitation. It was held that, in so far as it was necessary to exceed the limitation to provide for the payment of old debts, the levy was valid, and invalid as to all in excess of that amount. In *French v. Commissioners,* 74 N. C., 692, it appeared that, without any act of the General Assembly approving a levy in excess of the limitation, the commissioners, for the purpose of paying an indebtedness contracted since 1868, levied a tax in excess of double the State tax. There is no reference in the facts stated or the opinion to the poll tax or the question of equation. *Bynum, J.,* says: "If what are called 'necessary expenses' of a county exceed the limitation prescribed by law, the necessity cannot justify the violation of the Constitution. In such cases two remedies are open to the county. One is to apply to the Legislature if the tax is required for a special purpose. The Constitution (Art. V, sec. 7, subsec. 6) empowers the Legislature in such cases to give a special approval for an increased levy. The older and better way, however, is to reduce expenditures." Following this case we find *Carrow v. Commissioners, ib.,* 700; *Griffin v. Commissioners, ib.,* 701, involving the same question and disposed of by the Court

by referring to the opinion in *French's case*.   In *Brothers v. Commissioners, ib.,* 726, the commissioners, for the purpose of raising taxes to pay an "old debt," levied a tax on property in excess of the limitation and a corresponding tax on the poll. This was sustained in an opinion by *Mr. Justice Rodman,* holding that, as there was no limitation on the power to tax for the purpose of paying "old debts," the limitation of $2 on the poll did not apply.   He said that it was discretionary with the Legislature to levy the tax on the poll or not, as it thought best.   Here we find that the Court adopts the view expressed by *Judge Rodman* in *Railroad v. Holden,* that, in levying taxes to pay debts existing at the adoption of the Constitution, it was discretionary with the Legislature to adopt or reject the equation.   *Settle, J.,* dissented, saying: "It is clear that the limit of $2 on the poll cannot be exceeded for the payment of any debt, State or county, contracted *since* the Constitution; for, while the poll tax is specifically appropriated for the purpose of education and the support of the poor, * * * it is manifest to my mind that the spirit of the Constitution requires that the taxes be taken from the poll, except to the extent of $2, to be applied to the purposes of education and the support of the poor, and be placed upon the property of the State. · It is at least ungracious to exercise the sovereignty to tax a man's head, especially when he has nothing else to tax."   He seems to have overlooked the language used by him in *Mauney's case, supra.*   It will be noted that the excess over $2 in *Brothers' case* was to provide for "old debts."   *Clifton v. Wynne,* 80 N. C., 145, simply reaffirms what is said in *Street v. Commissioners, supra,* and the other cases cited.   In *Cain v. Commissioners,* 86 N. C., 8, the only question involved was as to local assessments for building a fence around a stock-law district.   *Cromartie v. Commissioners,* 87 N. C., 134, decides that, "without the special approval of the Legislature, the commissioners cannot exceed the limit, except for the payment of 'old debts.'"   No other

question is involved or discussed. *Evans v. Commissioners,* 89 N. C., 154, is not in point. In *Barksdale v. Commissioners,* 93 N. C., 472, the only point decided was that, for the purpose of keeping the public schools open four months, the commissioners could not exceed the limitation imposed by section 1. *Smith, C. J.,* says: "The levy finds no support in section 6 of Article V, for this is not one for a special purpose." The following language of the Chief Justice is significant: "Our decision rests upon the interpretation heretofore repeatedly given to the clause that directs the imposition of a poll tax equal to that imposed upon property valued for taxation at $300, by which the taxes are both thus associated, and arrested when on the poll they reach the maximum of $2." After discussing the policy of putting the limitation to taxation on property, he says: "There was a propriety in fixing a limit to the poll tax, because the fund raised from this source is appropriated exclusively to two objects, the support of the poor and the providing means of free education; but it was impracticable to foresee the needs of the State for moneys for its future management. And it is to be observed that the equation is only to determine the measure of the personal or poll tax, so long as it can be levied for the special objects mentioned and up to its fixed limitations:" While upon the principal question decided *Barksdale's case* has been overruled, this language is pertinent as indicating the opinion of the Court as then constituted. What it would have held if the tax had been levied for a special purpose we cannot say. *Parker's case,* 114 N. C., 166, is not in point. *Board of Education v. Commissioners,* 111 N. C., 578, is based upon *Barksdale's case.* The language of *MacRae, J.* (p. 580), clearly shows that the Court held to the opinion that the limitation and equation were restricted to "the ordinary expenses of government, both State and county." *Avery, J.,* dissented, adopting the opinion of *Merrimon, J.,* in *Barksdale's case.* *Williams v. Commissioners,* 119 N. C., 520, has no bearing

upon this appeal. In *Herring v. Dixon,* 122 N. C., 420, the only question presented and decided was whether a tax for working the public roads was for a special purpose for which the Legislature could authorize the levy of a property and poll tax beyond the limitation. No question of equation was presented, because the poll tax was levied. The same is held in *Tate v. Commissioners,* 122 N. C., 812. In *Jones v. Commissioners,* 107 N. C., 248, it appears that certain townships in Person County were by act of the General Assembly empowered by a vote of the people to issue bonds to aid in the construction of a railroad and to levy a tax upon *all property* in the townships. Plaintiffs sought an injunction against the issue of the bonds, assigning a number of objections to the act of the Legislature and the validity of the election. *Merrimon, C. J.,* says that, among other reasons, it was urged that the act was void "in that it authorized a tax upon property alone and not upon polls," etc. After discussing the question at length, he concludes that the limitation and equation prescribed by section 1, Article V, did not apply to taxes levied to pay interest and principal of bonds issued by municipal corporations pursuant to Article VII, section 7. The general discussion is along the same lines as in the preceding case. The question regarding the limitation on counties for special purposes is not presented, because the county had not proposed to issue any bonds. He distinguishes counties as *quasi* municipal from cities and towns as municipal corporations. He says that ordinary expenses, for which the Legislature may approve a special tax, are such as are incurred for building courthouses, bridges, etc. He further says that, while there is much *dicta,* there has been no decision of the question. In *Board of Education v. Commissioners,* 137 N. C., 310, the question presented was whether the poll tax levied pursuant to a special act authorizing a property and poll tax for the purpose of working the roads could be applied to that purpose, or whether section 3, Article V, applied it to

education and the support of the poor. The tax had been levied and paid. We were confronted with the provisions of section 3 and of section 7. "Every act of the General Assembly levying a tax shall state the object to which it is to be applied, and it shall be applied to no other purpose." We felt constrained to give effect to the last section. We felt the force of the contradictory sections, and the writer of that and of this opinion referred to the construction placed upon the Constitution by the Court in *Jones v. Commissioners,* and said: "We are constrained to hold that the act under which the tax to work the roads of Macon County was authorized necessarily provided for the capitation tax, and that its collection was lawful." We concluded the opinion with the statement that "it was best to decide only the question before us." In *Collie v. Commissioners,* 145 N. C., ·170, in which this Court reviewed and overruled the *Barksdale case,* this language is used, with the approval of four members: "While the General Assembly must regard such limitation upon its power to tax as defined in many decisions of this Court, when providing for the carrying out of objects of its own creation and the ordinary and current expenses of the State government, yet, when it comes to providing for those expenses especially directed by the Constitution itself, we do not think the limitation was intended to apply. Although the Legislature must observe the ratio of taxation between property and the poll provided in Article V, section 1, it is not required to observe the limitation upon the poll and the property tax if thereby it is prevented from giving effect to the provisions of Article IX." *Mr. Justice Walker,* in a concurring opinion, says: "The general limit of taxation is fixed, of course, at 66⅔ cents on the $100 in value of property, as I have already indicated, by the provision in regard to the equation and the maximum of the poll tax, which is $2 on the $300 of property at its true value in cash. All the above provisions were evidently intended to apply to taxes levied for

general State and county purposes, and could not by any admissible rule of interpretation apply to the taxes required for the support of the schools." Again he says: "To my mind, at least, it is perfectly clear that this power of taxation in order to educate and enlighten the people is not in any way subject to the provisions as to the limit of taxation fixed by other articles and sections of the Constitution, but what is known as the equation must be just and not necessarily inconsistent with Article IX, and perhaps should be observed. It is not necessary that I should express any binding opinion as to this matter." We have endeavored to note every case from which any light may be found upon this difficult question. We have read the "discussion by *Mr. Justice Rodman,* 66 N. C., Appendix," with interest. It is evident that he had given the questions arising upon the system of revenue and taxation established by the Constitution mature, anxious consideration. With his uniform candor he says: "On so difficult and novel a question it would be unbecoming to be rash or dogmatic. I entertain my opinions with great respect, not only for those of my brethren, but of all other candid thinkers."

In *State v. Godwin et al.,* 123 N. C., 697, the defendants were indicted for not performing certain duties imposed upon them as supervisors of the public roads. They averred that they had been advised by counsel that the statute imposing such duties was invalid, because it levied the tax upon property only and not on the poll also. The real question, therefore, was whether they had unlawfully and willfully violated their duty. It is true that the Court said that the act was invalid for that reason. It is manifest that the question was not given much consideration. No authority is cited. We cannot treat or consider this decision as controlling and final in respect to so important a question, in the absence of any other decision so holding. It is clearly held in *Broadnax v. Groom,* 64 N. C., 245, that a tax to provide for building bridges is for a special purpose, within the meaning of sec-

tion 6. It would seem that the term, "for county purposes," · used in section 6 should be construed to mean ordinary current expenses of the county government; otherwise no significance is given to the words "special purposes," the· distinction being between ordinary usual county purposes, which cannot exceed "double the State tax," and special county purposes, which may, with the "special approval of the General Assembly," do so. It may be that, as suggested by *Judge Rodman,* the framers of the Constitution intended that, for both ordinary and special purposes, the State and county tax combined should never exceed $2 on the $300 valuation of property; that the only purpose of making a distinction between ordinary county purposes and special purposes was to prevent the counties from levying "more than double the State tax" without the special approval of the General Assembly, and that with such approval the entire tax for ordinary and special purposes should not exceed the limitation. This construction was rejected as impracticable, *Settle, J.,* saying: "It is admitted that the State government itself cannot exist twelve months under this construction of the Constitution." If the framers of the Constitution supposed that under the "new order" which they were inaugurating in this State the limit which they undertook to fix upon taxation was practicable, it is not the first instance in the history of mankind showing that wise, far-seeing statesmanship, with an intimate knowledge of the past and familiar acquaintance with the present conditions of a people, is essential to the construction of a system of government suited and adapted to their future welfare. We cannot read the opinions of the Justices in *Railroad v. Holden, supra,* without seeing that *they* saw that the system or scheme of taxation was impracticable unless exceptions were made. The position that no taxes could be levied beyond $2 on the $300 worth of property for any purpose was rejected by all of the Justices. The suggestion that, after that limit was passed, the amount of the poll tax is left to the uncontrolled discre-

tion of the General Assembly we do not think finds support in the language of the Constitution, but is excluded by the positive command that "the State and county tax combined shall *never* exceed $2 on the head," and the further provision limiting its application to the purposes of education and the support of the poor. In the light and with the aid of all that has been written on the subject, we do not think that there is any tenable "middle ground" upon which to permanently rest the solution of this question. Either the equation between the poll and the property tax must run through and control every section of Article V, as well as Article VII, section 7, without any power in the General Assembly to disregard it, or it must be confined to taxes levied for the "ordinary current expenses" of the State and county governments, observing the positive command that the "State and county capitation tax combined shall *never* exceed $2 on the head." As we have seen, the first alternative has been rejected, and to enforce it would arrest the State and counties in their varied spheres of progress and development. An examination of the returns of the State Tax Commission for 1907 discloses the fact that sixty-eight of the ninety-seven counties (the last one formed not being organized) levied for ordinary county purposes to the full limit of 23⅔ cents on property, the State taking 43 of the 66⅔ cents. The others exceed that amount. This does not include special taxes for subscriptions to railroads, building new courthouses and jails, iron bridges, road improvements, etc. If we adopt the other construction we confine the poll tax "for all purposes" to $2, as provided by the Constitution, and apply it to the purposes directed—education and the support of the poor, and "to no other purpose." It makes the capitation tax uniform throughout the State, thus restoring the principle incorporated in the Constitution of 1776 as amended in 1835. It conforms to the express declaration of the people as expressed in the amendment ratified in August, 1900, which provides that "every person

148—16

presenting himself for registration shall pay, and *before he shall be entitled to vote he shall have paid, on or before the first day of May of the year in which he proposes to vote, his poll tax for the previous year, as prescribed by Article V, section 1, of the Constitution."* It is a strange anomaly to say that, while the right to vote is restricted by the payment of a poll tax which "shall never exceed $2," the voter may be disfranchised for failure to pay a poll tax the amount of which is left to the discretion of the General Assembly, the Constitution thus guaranteeing to every citizen otherwise qualified the right to vote by paying a poll tax of $2, and, by construction, giving the General Assembly the power to increase it to any amount they may deem proper. Whatever may have been the construction prior to January 1, 1901, we find in this amendment, which then became a part of the Constitution by the vote of the people, a construction which gives full force and effect to the provision that the State and county capitation tax combined shall never exceed $2, as prescribed in Article V, section 1. The State Tax Commissioners, in their report to the Governor for 1902, use this language: "We recommend that the poll tax be not levied except as a State and county tax, and that in no case shall the State and county capitation tax combined be greater than $2 a head, and that all laws authorizing municipalities to levy taxes on polls be repealed." They call attention to the constitutional provision. In their report of 1904 they renew the recommendation "that the poll tax levied under Article V, sections 1-6, of the Constitution, be not permitted to exceed $2 on the head. This recommendation is made because the Constitution limits it to this sum. See Article V, section 1; opinion of *Judge Rodman,* Appendix to 66 N. C., 520. And experience has demonstrated that this is as much as those liable for it have ability to pay." They call attention to the fact that 34,980 out of the 273,838 polls listed for the year 1903 were insolvent. Their very well-considered comments

are worthy of serious consideration. The attention of the Legislature being called to the subject, we find that it has in two statutes (chapter 840, Laws 1905, of local application, and chapter 935, Laws 1907, of general application) expressly declared its construction of the Constitution and repealed all laws which conflicted with such Constitution; certainly as to towns and cities, if not to counties. While not conclusive or binding upon us, this construction is entitled to much weight, and, as uniformly held by us, the statutes will not be declared void unless we are fully convinced, after much careful consideration, that they are clearly in conflict with the Constitution. They indicate that the subject is exciting the attention of the General Assembly. We have approached the consideration of it with the aid of able, exhaustive oral arguments and well-prepared briefs. As said by many of the Justices of this Court, it is fraught with difficulty. No one felt this more strongly or gave it more anxious thought than *Mr. Justice Rodman,* who, in his last expression in regard to certain phases of it, says: "On so difficult and novel a question it would be unbecoming to be rash or dogmatic." 66 N. C., Appendix. He and his associates were called upon to consider it at a time and under conditions which were most embarrassing. The State had entered into a "new order," with new forces controlling her affairs. Many who were most hopeful of the wisdom and success of the experiment soon became doubtful and discouraged. Her debt was increasing and the expenses of administering the government, both State and county, were increasing, while her resources and wealth were decreasing. The majority of those who in the past had guided her course and administered her affairs were disfranchised. Everything was unsettled and uncertain. As said by the Chief Justice and *Justice Rodman,* it was felt necessary to place checks upon the different classes of voters to prevent confiscation on the one hand and oppression on the other. It is difficult to understand the environment in which the

opinions in *Railroad v. Holden* were written, unless we recall conditions and tendencies which we would otherwise prefer to forget. After forty years we are called upon to review their words and opinions under happier and more hopeful conditions. The State debt is well in hand, her bonds are at and above par, her credit is unquestioned, the interest is provided for by a low rate of taxation, her railroad stocks have become very valuable. The resources of the State have reached proportions rendering it easy to provide for current expenses and to care for the unfortunate and afflicted, to educate her children, to promote all proper and reasonable enterprises making for the honor and welfare of the State. The counties are improving their public highways, their public buildings, and in all proper ways responding to the aspirations of an educated, patriotic, progressive, hopeful people. The wage-earner, amidst this general progress and prosperity, with the struggle to maintain and give to his family the benefits which come from it, finds his burden of taxation increased. The poll tax, which the Constitution tells him in no uncertain language "shall never exceed $2," has in many counties reached more than double this amount. We were told on the argument, by counsel well informed and representing the defendant board of commissioners, who have opportunity for knowing of such matters, that this tax on the heads of families, wage-earners, has become burdensome and oppressive. It is well calculated to retard immigration into our State of desirable citizens, especially when the amount which they may be called upon to pay for the privilege of coming is uncertain and constantly increasing. Looking to the Constitutions of other States, we find that they provide for a specific poll tax, uniform in amount and application. In two States, Maryland and Ohio, the Constitution prohibits the levy of any poll tax. In Virginia it is limited to $1.50, and in South Carolina, Georgia, Florida and other States to $1. In none of the States, other than California and Oklahoma, is it as much as

$2.   In a number of the States no reference is made to a poll tax.   In all of the States wherein it is levied the amount is fixed, uniform, and applied to public education.   Judge Cooley says that "capitation.taxes are not a common resort in modern times, and only in a few cases could they be just or politic."   1 Taxation, 28.   Without further discussing the subject, we are brought to the conclusion that the act of 1905, ch. 840, is in accordance with the correct interpretation of the Constitution; that the last clause in section 1, Article V, "and the State and county capitation tax combined shall never exceed $2 on the head," is imperative and prohibits the levy of any tax upon the poll for any purpose in excess of that sum; that section 2 applies the poll tax to the purposes of education and the support of the poor, and that this language withdraws it for any other purpose.   We are not inadvertent to the fact that this conclusion in this last respect is not in harmony with what was said in *Board of Education v. Board of Commissioners,* 137 N. C., 310.   As we have said, in that case the tax had been collected, and the only question was which of two contradictory provisions should control.   Under the construction which we give Article V, the question cannot again arise. The plaintiff raises the question that the poll tax directed to be levied for the payment of the railroad bonds enters into the contract and its repeal violates the obligation thereof.   The plaintiff has no such relation to the bonds, so far as this record discloses, as entitles it to raise the question.   It has no contract rights to be affected.   We decide that the Commissioners of Mecklenburg acted in accordance with the statute in failing to levy more than $2 on the poll, and that the statute is a valid exercise of power by the Legislature.   This conclusion renders it unnecessary to discuss the much-vexed question as to what is or is not a special purpose, within the meaning of section 6, Article V.   The plaintiff alleges that the defendant board of commissioners has levied 15 cents on the $100 valuation of real and personal property for the pur-

pose of paying the interest on the bonds referred to in the complaint, amounting to $300,000; that the total valuation of real and personal property in Mecklenburg County amounts to $22,429,697; that the levy of 15 cents yields $33,644.53, whereas the amount necessary to pay the interest is only $18,000; that no sinking fund is being created to pay the principal of said bonds; that it is informed and believes that the excess over the amount necessary to pay said interest is used by defendant board of commissioners for the general county expenses. Defendant admits that the total value of property is as alleged; that the other allegations in respect to this cause of action are admitted "for the purpose of this action alone." For further defense they say that at the time the levy of 15 cents was made, on the first day of June, 1907, the said board of commissioners did not and could not know that the total valuation of the taxable property in said county would reach the sum named; that when they made the levy they did not expect that it would yield so large an amount, but "expected and intended to apply any excess to defraying the ordinary expenses of the county, as had theretofore been done"; that as practically all of the other taxpayers in the county had paid their taxes pursuant to said levy, it would be inequitable to enjoin the collection from plaintiff of the amount due. It is not claimed that the commissioners exceeded any statutory limit in levying 15 cents on the $100 valuation of property to pay said interest, but that they did not wisely exercise their discretion. It seems that the increase in the value of property in the county over that of 1906 was $2,781,000. The court finds the facts in regard to this matter as above set forth. It cannot be said that the levy was invalid so that the court can, consistently with the discretion vested in the commissioners, enjoin its collection or undertake to revise its action. It is not clear that if before the large part, or, as said, "nearly all of the taxpayers" had paid it, the plaintiff or any other taxpayer had applied for a *man-*

*damus* commanding the commissioners to revise their action, in the light of the increased valuation of the property, the court would not have granted appropriate relief. We do not concur with the suggestion that the commissioners have the power to levy and collect a tax for a specific purpose and apply any part of it to another purpose. This would be in violation of the express prohibition of section 7, Article V of the Constitution. While we cannot sustain his Honor's judgment enjoining the entire levy, we are of the opinion that plaintiff, if so advised, is entitled to an order enjoining the appropriation of any part of the excess over the interest on the bonds to any other purpose. It may be held to meet the interest accruing for the coming year or for a sinking fund, as the provision of the act under which the bonds were issued may provide. No more should be taken from the citizen, either natural or corporate, by way of taxation than is reasonably necessary, and what is taken must be applied to the purpose for which it is so taken, and "no other." When these well-defined limits are disregarded, taxes become oppressive. The increase in wealth and in valuation should result in decrease in the rate of taxation; otherwise we will have neither. The courts should not and will not interfere in the administration of the internal domestic affairs of the counties and cities unless there is a manifest disregard or abuse of power or discretion. Doubtless the custom has prevailed of supplementing one necessity by resorting to some other resource, without any purpose to violate the law. A man may do this in his private business, but it is not permissible in the administration of public business. Each fund, its resources and its disbursements, should be kept separate. The cause will remain on the docket for final judgment, when the plaintiff may move for such orders in this regard as it may be advised. The order continuing the injunction was erroneous and must be

　　Reversed.