N. H. STREET and others *v.* THE BOARD OF COMMISSIONERS OF CRAVEN COUNTY,

When a few of a class are permitted to sue for a whole class, and especially when permitted to sue for the public, they will not be allowed technical advantages which involve a breach of faith.

*Therefore*, it is no good defence to a suit on the bonds issued to pay for stock subscribed for by a county in a certain railroad, that the agent authorized to make such subscription, instead of subscribing for the stock himself, purchased the same from a third person.

Nor is it a valid defence that the county issued its own bonds to pay such subscription instead of negotiating a loan, as empowered to do by the Act.

When by the Act authorizing a county to subscribe for stock in a railroad, it is provided that such county may "levy such taxes annually as may be sufficient to pay the amount of such loan and interest thereon," the Board of Commissioners of the county have the power to lay a tax of $2 on every $100 of property.

The equation of taxation provided for in Art. V, Sec. 1, does not apply to taxes to pay a public debt existing at the adoption of the Constitution, or for special county purposes: nor does sec. 7 of the same Article, forbiding counties to levy more than double of the State tax, apply to such debts.

Equity will enjoin no one to make an iniquitous defence: *Therefore*, a Board of County Commissioners are not compelled to plead the statute of limitations, even when such plea would be a valid defence.

(*University Railroad Co.*, v. *Holden*, (*Gov.*) 63 N. C. Rep. 410; *Simmons* v. *Wilson*, 66 N. C. Rep. 336; *Hill* v. *Commissioners of Forsythe*, 67 N. C. Rep. 367, cited and approved.)

CIVIL ACTION, an application for an injunction to restrain the defendants from collecting certain taxes, heard before *Clarke*, *J.*, at Chambers, in Craven county, December 13th, 1873.

The first application for an order restraining the defendants from collecting taxes, levied to pay the interest and part of the principal of certain bonds issued in 1854, to pay the county's subscription to the Atlantic & North Carolina Railroad, was refused by the Judge of the third Judicial District, but the

order was subsequently granted by Judge *Mitchell*, of the tenth Judicial District, until the coming in of the answer.   Upon the filing of the answer, exhibits and counter-affidavits, his Honor dismissed the restraining order, and the plaintiffs appealed.

All the facts relating to the points raised and argued in this Court, are fully set out in the opinion of the Court.

*Haughton, Justice* and *Smith & Strong*, for appellants.

*Lehman,* contra.

READE, J.   The facts found by his Honor below, and sent up to us, are substantially as follows:

Under an act of the General Assembly for the purpose, it was, in 1854, by proper proceedings in the County Court of Craven county, submitted to a popular vote of the qualified voters of the county, whether the county should subscribe for $150,000 of the stock of the Atlantic & North Carolina Railroad Company, to aid in constructing the same.   By a majority of six to one of the popular vote, the subscription was ordered and was made.

To raise the money to pay the subscription, county coupon bonds were issued and sold ; the money obtained, the subscription paid, and the road built.   Up to the beginning of the war taxes were laid, and paid by the people of the county to pay the interest upon the bonds.   In 1873, a tax was laid to pay a portion of the principal and interest of these bonds.   And the plaintiffs, who are a part of the tax payers of the county, seek to enjoin the collection of the tax.

1. Because the agent of the county for making the $150,000 subscription did not make an actual subscription ; but that another person made a large subscription for himself, and that the county agent *bought* the stock from such person, or at least the county subscription was substituted for his, to the amount of $150,000.

If this were true, it is a mere technicality which the plaintiffs would not be allowed to take advantage of.   When a few of a

class are permitted to sue for the whole class, and especially when permitted to sue for the public, they will not be allowed technical advantages which involve a breach of faith. They will be confined to the merits of the case. What matters it to the county whether it got the stock by subscription in the first instance, or by taking the subscription of some one else, unless a premium had been paid, which is not pretended? And, besides, the alleged irregularity in making the subscription would not affect the validity of the bonds in the hands of an innocent holder. The *power* of the county to issue the bonds being conceded, irregularities do not affect them. But besid that, the subscription appears from the books of the Company to have been original and regular on the part of the county.

2. Because by the act aforesaid which authorized the county subscription, the county was authorized to negotiate a loan to pay the subscription, but was not authorized to issue its bonds to secure the loan.

What has been already said in regard to technical objections, is applicable here. And besides, when the act authorized the county to negotiate a loan it authorized all the appropriate incidents to the loan; and bonds are not only usual, but necessary incidents.

3. Because the act aforesaid authorized the county to lay an *annual* tax to pay the loan by instalments, and the Board of Commissioners have, in violation of the act, levied a tax of $2 on the $100 worth of property, to pay the interest and a part of the principal.

We do not see how that violates the act. The act does not require the taxes to be laid annually to pay the loan in *equal* annual instalments; but authorizes the county to "levy such taxes annually as may be sufficient to pay the amount of such loan and the interest thereon." And it appears, that in 1855 the tax levied was 63 cents on the poll and 63 cents on the $100 worth of land, &c. Now, the tax is a half cent on the poll and $2 on the $100 worth of property. This is a heavy tax on property; but if it is within the power of the Board of

Commissioners to levy it, we cannot control their discretion. We suppose that the Board thought it necessary by reason of the accumulation of interest during the war. The only inquiry which we can make is as to the *power* of the Board.

4. Because the equation of taxation is disregarded, the equation being as much tax on the poll as on $300 worth of property.

That objection is well taken, if the equation of taxation in the Constitution, Art. 5, sec. 1, applies to taxes for the payment of debts existing at the adoption of the Constitution. But in *University R. R. Co.* v. *Holden*, 63 N. C. R., 410, it was held by all the Justices, that the equation did not apply to taxes to pay the public debt existing at the adoption of the Constitution, or for special county purposes; see also *Simmons* v. *Wilson*, 66 N. C. R., p. 336.

5. Because the Board of Commissioners did not "liquidate and audit the accounts against the county, and direct the sums necessary to defray them," as provided in acts of 1868-'69, chap. 20, sec. 8, sub-sec. 6, but levied $1 on the $100 worth of property to pay the coupons due on said bonds and payable after 1865, and other evidences of indebtedness, other than those named as due prior to 1865.

A sufficient answer to this is, that there is no allegation that the debts stated do not exist, or that the levy is in excess of the amount due. And a further answer is, that the section of the act quoted, is not the one applicable to this case, but section 3, not quoted; which provides that the Board shall "provide by taxation or otherwise for the prompt and regular payment with interest, of any existing debt due by bond or otherwise, except a debt in aid of the rebellion."

6. Because of divers other allegations: such as that the Board of Commissioners met on the wrong day, and at the wrong place, and were partial and corrupt, which are denied in the answer, and are not sustained by the proofs.

7. Because some of the bonds are barred by the Statute of Limitations, and the Board of Commissioners will not take the

advantage. The answer is that this must be left with the Board. And we know of no instance in which equity will enjoin one to make an iniquitous defense; nor would the defense avail them, if made.

8. Because the tax levied is more than double the State tax.

Article 5, section 7 of the Constitution, which has that provision, does not apply to taxes for an existing debt. And if it had been so intended, it would be in conflict with the Constitution of the United States, as impairing the obligation of contracts. *Simmons* v. *Wilson, supra.*

The foregoing are the principal grounds urged by the plaintiffs for enjoining the collection of the taxes. There were others which are deemed unimportant In a case lately before us, and a good deal like this, *Hill* v. *Commissioners of Forsythe county,* 67 N. C. R. p. 367, we said: " There are divers other points in the complaint, which seem to be unfounded, and besides, they are unimportant. The main thing, the people's will, seems to have been fairly obtained. The stock was taken, bonds were issued, rights have vested, taxes have been levied, and a portion of the installments have been paid, and taxes are now laid to pay other installments. The Board of Commissioners, who may be supposed to represent the popular will, are anxious to meet the obligations incurred, and the Court will not allow technical and frivolous objections, calculated to impair the public faith, to avail a *few,* who are indulged with the privilege of suing for a *class.* Only their substantial rights will be considered."

What is there said is applicable here. Twenty years ago the people voted to subscribe the stock, and to borrow the money to pay for it, they got the money and built the road, and have had the benefit of it, and now have it. They have recognized the bonds and paid the interest and a part of the principal up to the war; and then further payment was suspended and the interest has accumulated. In the impoverished condition of the people it may be *hard* to pay now, but what

can the Courts do ? They cannot relieve from contracts nor postpone their fulfillment.

It is not necessary that we should, in this case, consider the extent of the power of the Court to enjoin the collection of taxes. They are necessary to the administration of government. Can we stop the wheels of government ? The citizen must be protected against illegal taxes, it is true ; but must he not seek his rights in some other form than by enjoining the whole tax list ? There is no error in the order appealed from.

This will be certified, &c.

Per Curriam.                              Order confirmed.