W. R. TRULL and VAN BROWN *v.* THE BOARD OF COMMISSIONERS of MADISON COUNTY.

In order to pay debts contracted prior to the adoption of the Constitution, taxes may be levied by the County Commissioners, without regard to the Constitutional limitation, or equation; but in regard to new debts, both must be observed.

(*Street* v. *Commissioners of Craven,* 70 N. C. Rep. 164; *Maury* v. *Commissioners of Montgomery,* 71 N. C. Rep. 486, cited and approved.)

This was an application for an INJUNCTION against the Commissioners of MADISON county, heard before his Honor *Judge Watts,* at Fall Term, 1874, of the Superior Court of said county.

The plaintiffs, for themselves and for others, the tax-payers of Madison, allege in their complaint, the foundation of their application for a restraining order, that on the 5th day of July, 1874, the defendants levied upon the property of the citizens of the county, a tax of $1.60 on the $100 worth of said property; and insisting that such taxes should by law have been levied at their regular meeting, on the 1st of the preceding February.

The plaintiffs further allege, that the taxes so levied, are more than double the State tax, and more than $2 on the $300 worth of property, being levied without regard to the equation prescribed and the limitation contained in the Constitution.

They therefore pray for an order restraining the defendants, &c.

In their affidavit, the plaintiffs state specifically the debts, for the payment of which much of the taxes levied was to be appropriated, contending that they were new debts, contracted since the adoption of the Constitution.

In answer to the complaint, one of the Board files the following affidavit:

" ——— the former Board of Commissioners," on the 2d day of June, 1874, as appears from the records of said Board, levied a tax of $1.60 on the $100 worth of property, and eighty cents on each poll in the county for county purposes. It is stated on said records—the minute book of said Board—that said tax is for the following purposes, although on the tax lists subsequently placed in the hands of the tax collector by said Board, it does not appear for what purposes the said tax was levied, no part of the said $1.60 on the $100 worth of property being specially set apart for any special purpose, to-wit:

27 cents on the $100 to pay for the Court-house.
28 cents on the $100 to pay E. Sluder's claims.
35 cents on the $100 to pay the Young judgment.
10 cents on the $100 to pay White, Nelson & Gudger.
33⅓ cents on the $100 to pay instanter claims.
27⅔ cents on the $100 to pay for general county purposes.

The debt due for the Court-house was contracted prior to the adoption of the State Constitution, and the tax of 27 cents aforesaid is not more than sufficient to pay the same; the claims of E. Sluder are founded upon claims surrendered to the Board of Commissioners on the 8th day of October, 1872, upon the compromise of a suit then pending against said Board for the recovery of the same, and the claims surrendered, and for which claims were issued on the said 8th day of October, were created, a portion of them before, and a portion of them after the adoption of the Constitution of the State, as this affiant is informed; the Young judgment was recovered upon claims for jail fees, witness and jury tickets, the fees of clerks and other officers in criminal cases, &c., a part having been contracted before the adoption of the Constitution and a part afterwards, as this affiant is informed; the claim or judg-

ment of White, Nelson & Gudger, was for fees due witnesses and jurors in criminal cases, for debts contracted for the support of the poor, &c., that this affiant is informed that a part of the same was existing at the adoption of the Constitution and a part was afterwards created ; the "instanter claims" for the payment of $33\frac{1}{3}$ cents on the $100 worth of property was levied, is a class of claims issued from time to time by the Board in payment of the current expenses of the county, and the tax levied to pay them was regarded by the Board as a part of the tax for county purposes, as this affiant is informed and believes, to be added to the $26\frac{2}{3}$ cents, more particularly referred to on the minutes of the Board as a tax for general county purposes.

This affiant, referring more particularly to the aforesaid claims, judgments, &c., further says : That although the minutes of the Board show that a certain tax was levied in the year 1873 to pay for the court-house and to pay E. Sluder, yet the tax lists delivered to the tax collector for that year did not show that any special tax had been levied for such purposes ; besides the taxes collected for that year, were otherwise appropriated by the former Board of Commissioners, to-wit : to pay the necessary expenses of the county, and were not paid either on the court-house debt or to E. Sluder. In fact, this affiant is informed and believes, that the E. Sluder claim for the payment of which a certain tax was levied in 1873, was a different claim from the one which this year's tax is levied to pay ; that he is unable to state, nor has he the means now of ascertaining what proportion of the aforesaid claims, &c., were existing at the time of the adoption of the present State Constitution, though he is informed and believes that a large proportion of the same were existing when the Constitution was adopted. And furthermore, peremptory *mandamus* have been issued commanding the Board of Commissioners to lay and collect a tax sufficient to pay the Young judgment, and the White, Nelson & Gudger judgment, all aforesaid.

This affiant further shows, that according to the last assessment the balance of all the real and personal property in the county is only $420,306 ; and a tax of only double the State tax would produce but $3362.44—a sum barely adequate to the payment of the necessary expenses of the county—leaving the indebteness of the county unprovided for, although the honor of the county is pledged for the payment of at least a part of it, as this affiant is informed and believes.

The taxes for the several purposes aforesaid were levied, as

this affiant is informed, with no design to evade any law of the land, but for the honest purpose of freeing the county from the pecuniary embarrassments that have heretofore proved so destructive of the best interests of the people cf the county."

Upon the hearing in the Court below, on the complaint and affidavit, his Honor refused to grant the restraining order, and the plaintiffs appealed.

*J. H. Merrimon,* for the plaintiffs.
*M. E. Carter,* for the defendants.

READE, J. The plaintiffs seem to have carelessly fallen into the error of supposing that the defendants had levied taxes to pay debts which were not owing, and that the alleged debts, if they existed at all, were contracted since the adoption of the Constitution, and that therefore the limitation and equation of taxation in the Constitution prevented the levy complained of. But it appears from the defendants' affidavit, which presents the facts upon which we have to rely, that the debts are owing, and that a large portion of them were contracted prior to the adoption of the Constitution.

In order to pay the debts which were contracted prior to the Constitution, taxes may be levied without regard to the constitutional limitation or equation; but in regard to new debts, both must be observed. *State* v. *Commissioners of Craven,* 70 N. C. Rep., 644; *Maury* v. *Commissioners of Montgomery,* 71 N. C. Rep., 486.

The ruling of his Honor must be modified so as to ascertain how much of the tax levied on property is necessary to pay debts contracted before the Constitution, and allow that to be collected, and then allow twenty-six and two-thirds cents, (that being one-third of the eighty cents poll tax), on the hundred dollars worth of property to be collected for county purposes, and then restrain the excess, if any excess there be.

This will be certified. Each party will pay his own cost in this Court.

PER CURIAM.                                        Judgment accordingly.