DUNCAN CROMARTIE v. COMMISSIONERS OF BLADEN.

*County Commissioners—Mandamus—Contempt—Taxation.*

1. Where the fund raised by taxation is required to meet the necessary expenses of a county government, and no part thereof can be legally

applied to the satisfaction of a debt, the commissioners, acting in good faith in the execution of their powers, cannot be put in contempt for failure to pay such debt.

2. But in such case, an *alias* writ of *mandamus* should be awarded, to the end that any excess of revenue raised under the law may be applied to the debt.

3 The commissioners have no power to increase the levy beyond the constitutional limit without legislative authority, given in advance.

(*Mauney* v. *Com'rs*, 71 N. C., 486; *French's* case, 74 N. C., 692; *Trull's*, 72 N. C., 388; *Brodnax* v. *Groom*, 64 N. C., 244; *Satterthwaite*, 76 N. N. C. 153; *Simmons* v. *Wilson*, 66 N. C., 336; *Clifton* v. *Wynne*, 80 N. C., 145, cited and approved.)

RULE on defendants to show cause why they should not be attached for contempt in failing to obey a writ of *mandamus*, heard at Fall Term, 1882, at BLADEN Superior Court, before *Gilmer, J.*

When this cause was here on a former appeal at October term, 1881, it was upon such a defective finding of facts that the court were unable to dispose of the controversy upon its merits, and it was remanded. (See 85 N. C., 211. After its return to the superior court of Bladen, it was by order of the court, without objection, referred to G. F. Melvin, the clerk, to hear such evidence as the parties may submit before him, and to report such evidence, together with his findings of fact thereon, to the court at the next term. The referee accordingly proceeded to take depositions bearing upon the subject matter in the presence of both parties, and made his report with the evidence to fall term, 1882. The facts found by him are in substance as follows:

The debt due the plaintiff was based on county orders taken up by him, and disallowed upon his settlement, as treasurer, for want of county funds which could be legally appropriated to their payment, and the indebtedness for which the orders were issued was contracted after the adoption of the constitution in 1868, and prior to January 1st, 1877.

The county commissioners on the first Monday in August,

1880, for the fiscal year thence ensuing, during which the original *mandamus* in the case was sued out, levied for for county purposes a tax of $34\frac{1}{3}$ cents upon every hundred dollars on the valuation of taxable property, real and personal, being, with that levied by the general assembly for state objects for the same year, up to the full limits of $66\frac{2}{3}$ cents allowed by the constitution to be levied for both.

This levy and the receipts from other sources for the general fund, aggregate the sum of $5,093.83, whereof has been expended during the year the sum of $3,087.30, in payment of current demands, which in detail are set out in an accompanying exhibit; and these are all found to be necessary and economical. There were also outstanding liabilities for court costs incurred at fall term, 1880, and that succeeding, which have been since paid, $249 more. Since December 1st, 1876, about the commencement of the term of service of the defendants as county commissioners, the county government has been honestly and economically conducted.

The court house and county jail are out of repair, the latter unsafe for the custody of prisoners and needing two iron cages, for which the sum of $2,800 is estimated to be necessary, and several bridges need reparation at a cost of $150 or $200, and it was the intention of the commissioners to appropriate of the taxes of 1880 a sufficient sum for these objects.

In 1876, soon after entering into office, the commissioners applied to the general assembly for authority to levy a special tax to meet the county indebtedness, of which that due the plaintiff was part, and were refused; and they afterwards procured the passage of the act of 1879, ch. 162, which authorized the funding of the floating debt upon a compromise with creditors, and the issuing of bonds therefor, the interest on which was to be provided for, and a sinking fund for the ultimate redemption of the principal, by a special tax

not to exceed 24 cents on the hundred dollars value of property in any one year; and a board of audit was constituted to adjust the claims for which the commissioners were to issue bonds.

An effort was made to give practical effect to this legislation, but it proved unavailing, the creditors refusing their assent to its provisions.

The valuation of the taxable property of Bladen in 1880 was $1,310,769 and upon this sum was assessed the taxes for that year, up to the maximum allowed by law. The public buildings are still in pressing need of the repairs mentioned.

To the report numerous exceptions were taken by the plaintiff, most of them to the insufficient findings of fact, which we do not propose to consider specifically, since in our opinion the report is ample and furnishes all the information needed to pass upon the conduct of the commissioners, and their legal ability to comply with the mandate for the disobedience of which they are called on to answer.

Upon the hearing of the exceptions and the arguments of counsel, the court overruled the exceptions and confirmed the report, and proceeded to adjudge that the rule against the defendants to show cause why they should not be attached for contempt, be discharged; that the plaintiff's application for an *alias* peremptory writ of *mandamus* be refused; that the clerk pay over to the county treasurer the moneys in his hands to wit, $2,000, held under an order of spring term, 1881, and that the defendants recover their costs of plaintiff—the cause being retained for further proceedings and directions.

From the rulings upon the exceptions and the judgment rendered, the plaintiff appeals.

*Messrs. T. H. Sutton* and *W. A. Guthrie*, for plaintiff.
*Messrs. D. J. Devane* and *C. C. Lyon*, for defendants.

SMITH, C. J., after stating the above. When the cause was before us on the former appeal, and the facts upon which the culpability imputed to the defendants depended were insufficiently developed for us to decide upon the contempt, we used this language in the opinion : " It is manifest that where the public interests conflict with private interests, the latter must yield. If the entire fund which can be raised by taxation is required to meet the necessary expenses of an economical administration of the county government, and none can be diverted to pay its indebtedness without serious detriment to the public, none ought to be thus appropriated. * * * The commissioners are under an official obligation to keep and maintain the public buildings and bridges, falling under their supervision, in good repair and safe condition, and to provide for the other specified public objects."

The facts found and reported meet the conditions and requirements of the proposition thus announced, upon which their exemption from criminal responsibility depends, and sustain their answer to the rule.

It appears that all the financial resources of the year were used or were required, and were prevented from being used by the issuing of the rule, in defraying necessary county charges, and none could be spared for an indebtedness incurred in former years without injury to the public interests. The commissioners in exercising their official functions must be left to their own judgment in determining what are necessary expenses in conducting the county government, and when acting in good faith cannot be put in contempt for a·failure to do what they cannot do, with the means at their command, without a dereliction of duty in regard to other objects more imperative, and alike urgent. Nor does the writ require this of the commissioners, but only that they exercise the powers confided to them to raise the means to meet the plaintiffs' demand ; and this, in sub-

ordination to the higher claims of the public. A *mandamus* does not warrant the commissioners, in the words of SETTLE, J., " in levying taxes in any other manner or at any other time than is prescribed by law. The *mandamus* must be understood to mean that they shall levy and collect according to the general law governing the subject." *Mauney* v. *Commissioners of Montgomery*, 71 N. C., 486.

The taxes which the commissioners are empowered to levy have their limitations in the constitution, and these cannot be exceeded "except for a special purpose and with the special approval of the general assembly." Const., Art. V, §§ 1 and 6. The construction of these clauses has been fixed by a series of decisions, from one of which, *French* v. *Commissioners of New Hanover*, 74 N. C., 692, we extract the emphatic delaration of BYNUM, J. : "It admits of no dispute now that taxation for state and county purposes combined cannot exceed the constitutional limitation for their necessary expenses and *new debts.*" *Trull* v. *Commissioners of Madison*, 72 N. C., 388 ; *Clifton* v. *Wynne*, 80 N. C., 145 ; *Mauney* v. *Commissioners of Montgomery*, *supra*.

In the last cited case the ruling of *Buxton, J.*, was approved in these words: " As they (new debts) were contracted with a knowledge of the constitutional restrictions upon the county authorities in regard to taxation, the county authorities must observe the constitutional limitations, and not assess more than double of the tax for state purposes in any one year."

In *Broadnax* v. *Groom*, 64 N. C., 244, PEARSON, C. J., speaking in reference to the exercise by the court of a supervisory control over these officers, inquires, " who is to decide what are the necessary expenses?" and answers his own question thus : " The county commissioners, to whom is confided the trust of regulating all county matters. Repairing and building bridges are a part of the necessary expenses of a county, as much so as keeping the roads in order or making

new roads." The same language is reiterated in *Satter-thwaite* v. *Commissioners of Beaufort,* 76 N. C., 153. In the same opinion it is laid down that "the court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the constitution upon the legislative department of the government, *or upon the county authorities."*

In the argument here for the appellant, it is urged that the disobedience consists in the failure to levy a tax adequate to pay the plaintiff's judgment, above the legal limits, and then to ask the approval of the general assembly in order to its collection, and that this is the proper course to be pursued in obtaining legislative sanction to the proposed increase. We do not give our assent to this interpretation of the clause in the constitution which declares that "the taxes levied by the commissioners of the several counties for county purposes shall be levied in like manner with the state taxes, and shall never exceed the double of the state tax, except for special purposes and with the special approval of the general assembly." The legislative practice has uniformly been, as far as we know, to give approval in advance, and thus confer the requisite legal authority, to levy special taxes beyond the assigned limits; though if given after the levy, it would doubtless be equally effectual. This is implied in the ruling in *Simmons* v. *Wilson,* 66 N. C., 336, that a legislative approval previously given and afterwards recalled, arrested all further collections of taxes imposed by its authority, and intimated in *French's,* and assumed in *Broadnax's* case, already referred to.

There is a manifest propriety in asking the assent of the legislature to an increased levy in advance, as has been, we believe, the uniform practice, when such assent is necessary to its validity and the enforcement of the taxes. The tax list and the clerk's endorsement of an order for collection have, under the statute, the force and effect of a judgment

and execution against the property of each person charged in the list. Acts 1879, ch. 71 § 25. And it could not be intended that an unwarranted tax should be inserted in the process, or that the collection should be suspended until by the action of the general assembly it is legalized.

Nor are we prepared to admit that an application for approval is not one resting in the sound discretion of the commissioners, and that any judicial coercion can be used to control the exercise of their own judgment in the matter.

" In short," is the language of the Chief Justice in a case already cited, " this court is not capable of controlling the exercise of power on the part of the general assembly, or of the county authorities, and cannot assume to do so without putting itself in antagonism to the general assembly or to the county authorities, and erecting a despotism of five men "—referring to the number of the justices then constituting this court.

But if it were otherwise, the commissioners did make the application for permission to provide for the county debt, including that of the plaintiff, and were denied authority to do so.

Upon review of the whole case we think the rule was properly discharged. But we think the refusal of the court to award an *alias* writ of *mandamus* was error, for it is in the nature of final process, to which the plaintiff is entitled, so that whenever the necessary county expenses can be met without absorbing all the county revenue which can be raised under the law, the excess must be applied to the debt recovered, and this is the full extent to which the process can go.

The judgment must be thus modified, and then affirmed. Let this be certified.

Error.                                    Modified and affirmed.