WALKER, J., concurs in result; CLARK, C.J., dissenting.
In the year 1915 the county of Cherokee levied and collected a tax of 2 2/3 cents in excess of 66 2/3 cents on property of the value of $100. The plaintiff paid this tax on its property under protest, and this action is brought to recover the amount so paid. The tax was not for schools, but was levied "for the purpose of taking up a note in bank made by the predecessor board and other current expenses" (88) under the authority of ch. 33, sec. 9, Laws of 1913, which is as follows:
"SEC. 9. That the board of commissioners of any county in North Carolina be and they are hereby authorized and empowered to levy a special tax in excess of the constitutional limitation, not exceeding five (5) cents on the one hundred dollars ($100) valuation of all property listed for taxation in their respective counties, to provide for any deficiency in the necessary expenses and revenue of said respective counties which may be caused by the provisions of this act."
These facts are found by his Honor and are not controverted by the defendant, and they necessitate an inquiry into the constitutionality of the act of the General Assembly.
the text-writers and the decided cases agree that it is not only within the power, but that it is the duty, of the courts in proper cases to *Page 93 
declare an act of the Legislature unconstitutional, and this obligation arises from the duty imposed upon the courts to declare what the law is.
The Constitution is the supreme law. It is ordained and established by the people, and all judges are sworn to support it. When the constitutionality of an act of the General Assembly is questioned, the courts place the act by the side of the Constitution, with the purpose and the desire to uphold it if it can be reasonably done, but under the obligation, if there is an irreconcilable conflict, to sustain the will of the people as expressed in the Constitution, and not the will of the legislators, who are but agents of the people.
The principle is well stated in 6 Ruling Case Law, 72, that "Since the Constitution is intended for the observance of the judiciary as well as the other departments of government, and the judges are sworn to support its provisions, the courts are not at liberty to overlook or disregard its commands, and, therefore, when it is clear that a statute transgresses the authority vested in the Legislature by the Constitution it is the duty of the courts to declare the act unconstitutional, and from this duty they cannot shrink without violating their oaths of office. The duty, therefore, to declare the law unconstitutional in a proper case cannot be declined, and must be performed in accordance with the deliberate judgment of the tribunal in which the validity of the enactment is directly drawn in question."
The first exercise of this power in this State was in 1787, in Bayard v.Singleton, 1 N.C. 42, and one of the latest was in 1912, in Comrs. v.Webb, 160 N.C. 594, in which an act was held unconstitutional by the unanimous opinion of the Court, written by the present Chief Justice.
In Sutton v. Phillips, 116 N.C. 504, in an opinion written by ChiefJustice Clark, the Court says: "While the courts have the power, and it is their duty in proper cases, to declare an act of the Legislature unconstitutional, it is a well-recognized principle that the courts will not declare that this coordinate branch of the government (89) has exceeded the powers vested in it unless it is plainly and clearly the case"; and this language was approved and affirmed in the case of In re Watson, 157 N.C. 349.
In 1913 an act of the General Assembly was declared to be unconstitutional in Asbury v. Albemarle, 162 N.C. 248, and in Sewerage Co.v. Monroe, 162 N.C. 275, and between these cases, running from the first volume of our Reports to the 162d, covering a period of one hundred and twenty-five years, there could be cited fifty or more cases in which acts of the General Assembly have been declared unconstitutional, and we find no judicial opinion to the contrary. *Page 94 
De Tocqueville, the eminent French philosopher, speaking of our Constitution and of the powers of the courts, says in Democracy in America, p. 98 et seq.: "An American Constitution is not supposed to be immutable, as in France, nor is it susceptible of modification by the ordinary powers of society, as in England. It constitutes a detached whole, which, as it represents the determination of the whole people, is no less binding on the legislator than on the private citizen, but which may be altered by the will of the people in predetermined cases, according to established rules. In America the Constitution may, therefore, vary; but as long as it exists it is the origin of all authority and the sole vehicle of the prediminating force. . . . In the United States the Constitution governs the legislator as much as the private citizen; as it is the first of laws it cannot be modified by a law, and it is therefore just that the tribunals should obey the Constitution in preference to any law. This condition is essential to the power of the judicature, for to select that legal obligation by which he is most strictly bound is the natural right of every magistrate. . . . I am inclined to believe this practice of the American courts to be at once the most favorable to liberty as well as to public order."
We must then examine the sections of the Constitution relating to taxation for the purpose of seeing if the General Assembly has transcended the limitations on its powers to be found in that instrument. Art. V, sec. 1, is as follows: "The General Assembly shall levy a capitation tax on every male inhabitant of the State over twenty-one and under fifty years of age, which shall be equal on each to the tax on property valued at three hundred dollars in cash. The commissioners of the several counties may exempt from capitation tax in special cases, on account of poverty and infirmity, and the State and county capitation tax combined shall never exceed two dollars on the head."
This section establishes the equation between property and the poll and limits the power to levy State and county taxes on property (90) to $2 on property of the value of $300, or 66 2/3 on $100.
"It is too plain to admit of argument that the intent of this section was to establish an invariable proportion between the poll tax and the property tax, and that as the former is limited to $2 on the poll, so is the latter to $2 on the $300 valuation of property." This was said byRodman, J., a member of the convention which framed the Constitution, in R.R. v. Holden, 63 N.C. 427.
This section commands two things:
"1. That the poll tax shall always be equal to that on $300 valuation of property. This has been called the equation of taxation.
"2. That the State and county poll tax shall not exceed $2. This fixes the limit of taxation on polls, and consequently on property. *Page 95 
"These two directions are equally definite and positive; they are in no wise inconsistent with each other; it is impossible that one has any more favor or sanctity than the other merely because it comes earlier or later in the sentence; they must be equally binding on the Legislature." Rodman,J., in Winslow v. Weith, 66 N.C. 432.
"It is well settled that, for the ordinary expenses of government, both State and county, the first section of Article V of the Constitution places the limit of taxation and preserves the equation between the capitation and the property tax — the capitation tax never to exceed $2 and the tax upon property valued at $300 to be confined within the same limit." Boardof Education v. Comrs., 111 N.C. 580.
"The taxes which the commissioners are empowered to levy have their limitations in the Constitution, and these cannot be exceeded `except for a special purpose and with the special approval of the General Assembly.' Const., Art. V, secs. 1 and 6. The construction of these clauses has been fixed by a series of decisions, from one of which (French v. Comrs.,74 N.C. 692) we extract the emphatic declaration of Bynum, J., `It admits of no dispute now that taxation for state and county purposes combined cannot exceed the constitutional limitation for their necessary expenses and new debts.' Trull v. Comrs., 72 N.C. 388; Clifton v. Wynne,80 N.C. 145; Mauney v. Comrs., supra." Cromartie v. Comrs.,87 N.C. 139.
These authorities establish beyond controversy that the tax is illegal, under section 1 of Article V, because it exceeds the limitation on State and county taxes, and the defendant, if it has any standing in court, must rely on section 6 of Article V, which permits the county commissioners to exceed the constitutional limitation in section 1 "for a special purpose and with the special approval of the General Assembly."
These two sections must be considered and read together with the purpose in view of giving effect to both, and a construction must be avoided which will make one destructive of the other, which would be the result if the commissioners could exceed the (91) constitutional limitation under authority of section 6 for general purposes, and under general laws, because under such a construction the General Assembly could levy a State tax up to the limitation under section 1, and then pass a general law under section 6 allowing the counties to levy the same tax for county expenses.
The first section "was inserted in the Constitution of 1868 as a guarantee to the property holders of the State that they would not be oppressed by inordinate taxes laid by representatives elected by the newly enfranchised blacks, who had small property to be taxed and whose representatives might otherwise be tempted to levy excessive taxes on property (Rodman, J., 63 N.C. at p. 427), and for nearly thirty years *Page 96 
since this breakwater was put into the Constitution it has never been lost sight of" (Clark, J., in Russell v. Ayer, 120 N.C. 191), and section 6 for the purpose of providing for an emergency that could not be reasonably anticipated, and as a safeguard against ancreasing [increasing] taxation hastily and without due consideration, and to furnish publicity, a special act stating the special purpose is required.
Does section 9 of chapter 33 of the Laws of 1913 come within the classification of special laws, and is a tax for current expenses of a county a special purpose? It is a part of an act "to provide for a six-months school term in every public school district of the State," and the section authorizes a tax in every county in the State for ordinary expenses, without enumerating them, thus making it coextensive with legislative power, so far as territory or the people or property to be affected are concerned, and the purpose is general.
"A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things as a class is a special one. Ewing v. Hoblitzelle, 85 Mo. 64, 78; Schmalz v.Wooley, 56 N.J. Eq. 649; In re New York Elevated R. Co. (N.Y.), 3 Abb. N.C. 401, 417, 422; Gay v. Thomas, 5 Okla. 1; Clark v. Finley, 93 Tex. 171;Hamman v. Central Coal and Coke Co., 156 Mo. 232; State ex rel. Harris v.Herrmann, 75 Mo. 340, 346; Lynch v. Murphy, 119 Mo. 163; Sawyer v. Dooley,21 Nev. 390; Herbert v. Baltimore County Comrs., 97 Md. 639.
"Special laws are those made for individual cases, or for less than a class requiring laws to its peculiar conditions and circumstances. VermontLoan and Trust Co. v. Whithed, 2 N.D. 82; Guthrie Daily Leader v. Cameron,3 Okla. 677; Maxwell v. Tillamook County, 20 Or. 495 (quoting Healey v.Dudley (N.Y.), 5 Lans. 115; Suth. St. Const., par. 127); Groves v. GrantCounty Court, 42 W. Va. 587 (citing 1 Bl. Com., 196).
"A special statute is one operating upon one, or a portion of a (92) class, instead of upon all of a class. S. v. Irwin, 5 Nev. 111, 120. "`Local or special legislation,' according to the well-known meaning of the words, applies exclusively to special or particular places, or special and particular persons, and is distinguished from a statute intended to be general in its operation and that relating to classes of persons or subjects. Stone v. Wilson (Ky.), 39 S.W. 49, 50.
"Private or special statutes,' says Sedgwick in his work on Statutory and Constitutional Law, `relate to certain individuals or particular classes of men.' In Smith on Constitutional Construction it is said: "The distinction between public and private statutes is this: A general or public act is a universal rule that regards the whole community, but special or private acts are rather exceptions than rules, being those *Page 97 
which operate upon private persons and concerns.' Page 917, par. 802;People v. Wright, 70 Ill. 388, 298.
"Whether or not an act of the Legislature is special or general, within a constitutional provision, is not to be determined by the form of the act, but by what in the ordinary course of things must necessarily be its operation and effect. If this operation and effect must necessarily be special, the act is special, whatever may be its form; but if, on the other hand, the act has room within its terms to operate on all of a class, present and prospective, and not merely on one particular thing, or on a particular class of things, existing at the time of its passage, the act is general. City of Topeka v. Gillett, 32 Kan. 431; S. v. Hunter,38 Kan. 578." Words and Phrases, V. 7, 6577 et seq.
There are two cases in our own Reports which seem to be decisive of the whole question. The first is Williams v. Comrs., 119 N.C. 520, approved inHerring v. Dixon, 122 N.C. 423, in which it was held that a statute authorizing a special county tax for the purpose of maintaining public ferries, building roads, and meeting other current expenses was not for a "special purpose" within the meaning of section 6 of Article V of the Constitution, and that a tax levied thereunder in excess of the constitutional limitation of section 1 was void; and the second, Bennett v.Comrs., 173 N.C. 629, which says that a statute "conferring on county commissioners the power to borrow money for the necessary expenses of the county and provide for its payment" "neither is, nor does it purport to be, a `special act and for a special purpose' within the meaning of the constitutional provision."
We are, therefore, of opinion the tax has not been levied under a special act or for a special purpose, and this seems to have been the opinion of the General Assembly of 1917 and of those in charge of the educational interests of the State, as otherwise there was no necessity for submitting to a vote the constitutional amendment providing for a six-months school term. Why take the trouble to amend the Constitution, and why run the risk of a vote of disapproval, if (93) it was within the power of the General Assembly to increase the State tax for schools and to authorize the counties to levy taxes in excess of the constitutional limitation for ordinary and necessary expenses; and this is what the act of 1913 purports to do.
Another act of 1913 (chapter 88) has been referred to in the argument, but it only permits the levy of a tax for the years 1913 and 1914, and the time for acting thereunder had expired when the tax of 1915, which is in controversy in this action, was levied; nor did the commissioners of Cherokee purport to act under chapter 88. The amendatory act of 1917 (chapter 109) is also ineffective to validate the tax levy of 1915. In the first section it amends chapter 88, Laws of 1913, by making *Page 98 
the tax for current expenses of the county in excess of the constitutional limitation an annual tax, and would fall under the same condemnation as section 9 of chapter 33, Laws of 1913, and in the second section it undertakes to ratify levies for 1915 and 1916, but the General Assembly cannot ratify an act which it could not authorize originally.
The defendant further contends that this action cannot be maintained, although the tax is illegal, because of the failure to present the claim and make demand as required by section 1384 of the Revisal, but the plaintiff has followed and complied with section 2855 of the Revisal, which regulates and controls actions brought to recover illegal taxes paid under protest.
Affirmed.