DIRECTOR-GENERAL OF RAILROADS AND SEABOARD AIR LINE RAILWAY v. COMMISSIONERS OF BLADEN COUNTY.

(Filed 19 November, 1919.)

**Taxation—Limitations—Ordinary Expenses—Constitutional Law—Counties and Towns—Municipal Corporations—Statutes—Protest—Actions.**

    An act which attempts to authorize a county to levy a tax in excess of the 66⅔ cents on the hundred-dollar valuation of property, State Constitution, Art. V, sec. 1, for "current and necessary expenses," is for the ordinary expenses of the county and is void as to the excess; and not being

valid under section 6 of the same article relating to taxation for special purposes, a taxpayer, having paid the tax under protest and conformed to the provisions of the statutes, may recover it in his action. *R. R. v. Cherokee County*, 177 N. C., 86, cited and applied.

HOKE, J., concurs in result; CLARK, C. J., dissenting.

APPEAL by defendant from *Calvert, J.*, out of term by consent, upon case agreed, 8 July, 1919, from BLADEN.

This is an action to recover the amount of a tax levy of five cents paid under protest.

The parties have agreed upon the following facts:

"1. That in the year 1918 the commissioners of Bladen County levied taxes for ordinary county purposes, which, with the State taxes, amounted to sixty-six and two-thirds cents on property of the value of $100, and in addition thereto levied a special tax of fifteen cents for schools, and in addition thereto levied a tax of five cents, which last tax is the tax in controversy in this action.

"2. That the taxes so levied in 1918, and referred to in the last preceding paragraph, are itemized as follows:

| | |
|---|---:|
| State tax for general purposes | $23\frac{2}{3}$ |
| State tax for pensions | 4 |
| State tax for schools | 20 |

| | |
|---|---:|
| Total State tax levied under sec. 3, ch. 231, Public Acts of 1917, being the 1917 Revenue Act | $47\frac{2}{3}$ |
| Add general county tax | 19 |

$66\frac{2}{3}$

| | |
|---|---:|
| Add special school tax levied under sec. 8 of ch. 33, Public Acts of 1913 | 15 |

$81\frac{2}{3}$

| | |
|---|---:|
| Add county tax levied under chapter 101, Public-Local Acts of 1917, which is the tax involved in this action | 5 |

| | |
|---|---:|
| Making total tax levied in 1918 on $100 valuation | $86\frac{2}{3}$ |

"3. That none of the aforesaid taxes levied in 1918 were submitted to a vote of the people."

The plaintiffs have paid all of the taxes levied, and they make no contest as to any except the tax of five cents, levied in excess of $66\frac{2}{3}$ cents on property of the value of $100 to meet current and necessary expenses of the county.

The statute under which the defendant claims authority to levy the tax is chapter 101, Public-Local Laws 1917, the material part of which is as follows:

"Section 1. That the board of commissioners of Bladen County are hereby directed to examine, on or before the first Monday in June of each year, the tax abstracts for the current year, and if, upon such examination, it shall appear that the taxes which the board are authorized to levy, after deducting from the $81\frac{2}{3}$ cents on the $100 worth of property, the taxes levied by the State for general purposes, for pensions and for schools, and the fifteen cents special school tax, will not be sufficient to meet the current and necessary expenses of the county for the current year, then the said board of commissioners shall be, and are hereby, authorized, empowered, and directed to levy and collect, in addition to said $81\frac{2}{3}$ cents, a sufficient amount of taxes on all the tangible property and polls within said county of Bladen to meet the current and necessary expenses of the county, said additional tax not to exceed ten cents on the $100 valuation of property, and thirty cents on the poll, and in levying and collecting such tax the constitutional equation between property and poll shall be observed."

Judgment was rendered in favor of the plaintiffs, and defendant excepted and appealed.

*McIntyre, Lawrence & Proctor for plaintiffs.*
*E. F. McCulloch, Jr., for defendant.*

Allen, J. The facts in *R. R. v. Cherokee,* 177 N. C., 86, are almost identical with those in the record now before us, and the principles therein announced are decisive of the present appeal.

In that case the county of Cherokee levied a tax of $2\frac{2}{3}$ cents in excess of $66\frac{2}{3}$ cents on property of the value of $100, for the purpose of taking up a note in bank and paying other current expenses, acting under a statute which authorized the commissioners to levy a special tax in excess of the constitutional limitation not to exceed five cents on property to provide for any deficiency in the necessary expenses and revenue of the county, and it was held that the plaintiff, who had paid under protest, was entitled to recover it.

We then said, after quoting Art. V, sec. 1 of the Constitution: "This section commands two things:

" '1. That the poll tax shall always be equal to that on $300 valuation of property. This has been called the equation of taxation.

" '2. That the State and county poll tax shall not exceed $2. This fixes the limit of taxation on polls, and consequently on property.

" 'These two directions are equally definite and positive; they are in no wise inconsistent with each other; it is impossible that one has any

more favor or sanctity than the other merely because it comes earlier or later in the sentence; they must be equally binding on the Legislature.' *Rodman, J.,* in *Winslow v. Weith,* 66 N. C., 432.

" 'It is well settled that, for the ordinary expenses of government, both State and county, the first section of Art. V of the Constitution places the limit of taxation and preserves the equation between the capitation and the property tax—the capitation tax never to exceed $2, and the tax upon property valued at $300, to be confined within the same limit.' *Board of Education v. Comrs.,* 111 N. C., 580.

" 'The taxes which the commissioners are empowered to levy have their limitations in the Constitution, and these cannot be exceeded "except for a special purpose and with the special approval of the General Assembly." Const., Art. V, secs. 1 and 6. The construction of these clauses has been fixed by a series of decisions, from one of which (*French v. Comrs.,* 74 N. C., 692) we extract the emphatic declaration of *Bynum, J.:* "It admits of no dispute now that taxation for State and county purposes combined cannot exceed the constitutional limitation for their necessary expenses and *new debts.*" *Trull v. Comrs.,* 72 N. C., 388; *Clifton v. Wynne,* 80 N. C., 145; *Mauney v. Comrs.,* 71 N. C., 486; *Cromartie v. Comrs.,* 87 N. C., 139."

And again, after quoting Art. V, sec. 6: "These two sections must be considered and read together with the purpose in view of giving effect to both, and a construction must be avoided which will make one destructive of the other, which would be the result if the commissioners could exceed the constitutional limitation under authority of section 6 for general purposes, and under general laws, because under such a construction the General Assembly could levy a State tax up to the limitation under section 1, and then pass a general law under section 6, allowing the counties to levy the same tax for county expenses."

The *Cherokee case* has attracted much attention, because it has stood in the way of some improvements that were needed, and of others very much desired, but it declares no new principle, and, on the contrary, simply adheres to the uniform and consistent construction of the Constitution since *R. R. v. Holden,* 63 N. C., 410, and was affirmed at the last term by the unanimous opinion of the Court in *Parvin v. Comrs.,* 177 N. C., 509, in which the Court says, after referring to the *Cherokee case:* "In that case the tax was intended to provide for past deficits in the revenues for ordinary and necessary county expenses, and fell directly within Art. V, sec. 1 of the Constitution, prescribing the limitation and equation of taxation, and not within sec. 6 of that article."

This Court said, in *French v. Comrs.,* 74 N. C., 696: "It admits of no dispute now that taxation for State and county purposes combined cannot exceed the constitutional limitation for their necessary expenses

and new debts. . . . If what are often miscalled the necessary expenses of a county exceed the limitation prescribed by law, the necessity cannot justify the violation of the Constitution. In such cases two remedies are open to the county. One is to apply to the Legislature, if the tax is required for a special purpose. The Constitution, Art. V, sec. 6, empowers the Legislature in such cases to give a special approval for an increased levy. The other and better way, however, is to reduce the expenditure. . . . We hold that the State tax of thirty-eight cents, and the county tax of twenty-eight and two-thirds on the hundred dollars of valuation exceeds the constitutional limitation of taxation for current expenses."

· In *Cromartie v. Comrs.*, 87 N. C., 134: "The taxes which the commissioners are empowered to levy have their limitations in the Constitution, and these cannot be exceeded except for a special purpose and with the special approval of the General Assembly. Const., Art. V, secs. 1 and 6. The construction of these clauses has been fixed by a series of decisions."

In *Board of Education v. Comrs.*, 107 N. C., 110: "It is settled by many decisions of this Court that the equation and limitation of taxation established by the Constitution, Art. V, sec. 1, prohibits and prevents the levy of a greater capitation tax than $2 on each taxable poll, and a tax for the equal amount on property valued at $300 in cash to raise revenue for the ordinary purposes of the State and county governments. This is equal to a tax levy of 66⅔ cents on property valued at $100 in cash. For such purpose the whole tax levied cannot exceed the sums mentioned. *R. R. v. Holding*, 63 N. C., 410; *Mauney v. Comrs.*, 71 N. C., 486; *Trull v. Comrs.*, 72 N. C., 388; *French v. Comrs.*, 74 N. C., 692; *Griffin v. Comrs.*, 74 N. C., 701; *Clifton v. Wynne*, 80 N. C., 145."

In *Williams v. Comrs.*, 119 N. C., 521: "The general power of the Legislature to levy taxes is restricted by the Constitution to 66⅔ cents on $100 valuation of property. Art. V, sec. 1. And Art. V, sec. 6, restricts the power of the county to double the amount levied for State purposes. But both these levies, for State and county together, cannot exceed the constitutional limitation of 66⅔ cents. *R. R. v. Holden*, 63 N. C., 410."

In *Moose v. Comrs.*, 172 N. C., 427: "It is well settled that, for the ordinary expenses of government, both State and county, the first section of Art. V of the Constitution places the limit of taxation and preserves the equation between the capitation and the property tax—the capitation tax never to exceed $2, and the tax upon property valued at $300 to be confined within the same limit."

And in *Bennett v. Comrs.*, 173 N. C., 625: "The Constitution, Art. V, sec. 1, provides in effect that for ordinary purposes the State and

county tax combined shall in no case exceed the sum of $2 on the poll, and 66⅔ cents on the $100 valuation of property. So far as we are aware, and as to debts and obligations incurred since the provision was established, no departure from this limitation on the amount of taxation has been approved except when and to the extent required to maintain a four-months school, as enjoined by Art. IX, sec. 3 (*Collie v. Comrs.*, 145 N. C., 170), and except when the tax is levied for a special purpose and with the special approval of the General Assembly. *Moose v. Comrs.*, 172 N. C., 419; *R. R. v. Comrs.*, 148 N. C., 220."

Another remedy than the two suggested in *French v. Comrs.* is to amend the Constitution if the limitation on taxation does not meet the present needs of the State, but this must be done in the way pointed out, in the Constitution and not by the courts.

These authorities establish beyond controversy that the State and county taxes combined cannot exceed 66⅔ cents on property of the value of $100 for ordinary expenses, and it would seem to require no discussion to show that "current and necessary expenses," for which the tax levied by the defendant proposes to provide, are ordinary expenses.

There may be evils attending the exercise of jurisdiction to declare an act of the General Assembly unconstitutional, but they are not comparable to those following the declaration that a constitutional provision is of no effect by judicial decision.

The first is necessary to make the acts of legislators, who are but agents of the people, conform to the wishes of their principles as expressed in the Constitution, while the other would enable the courts to destroy our system of government, which is one of law and order under a written Constitution, and as we are confronted with the necessity of making a choice between the two, we stand by the Constitution.

If the General Assembly can authorize the levy of a tax in excess of the constitutional limitation for the ordinary expenses of a county, and the courts should so declare, Art. V, sec. 1 of the Constitution, which was intended to protect the people against excessive taxation, would be a "dead letter" and of no effect.

Affirmed.

HOKE, J., concurs in result.

CLARK, C. J., dissenting: The General Assembly of 1917, ch. 101, Public-Local Laws, authorized the "commissioners of Bladen County to levy and collect a sufficient tax to maintain six-months school in said county, and not to exceed 10 cents, to meet the current expenses of the county." On 8 July, 1918, the commissioners duly made the tax levy for the ensuing year: "Pursuant to chapter 101, Public-Local Laws 1917, the board of commissioners of Bladen County, at its regular

monthly meeting on the first Monday in June, examined the tax abstracts and it having appeared that the taxes which the board was authorized to levy, after deducting 81⅔ cents on the $100 worth of property for general State purposes, pensions, and schools, including 15 cents special school tax, there will not be sufficient funds to meet the current and necessary expenses of the county, a special tax of 5 cents on the $100 worth of property, and 15 cents on every poll within the county is levied."

The Constitution, Art. V, sec. 1, provides that, "The General Assembly shall levy a capitation tax, which 'shall be equal to the tax on property valued at $300 in cash.' " If this was the absolute limit the property tax, State and county, could under no circumstances ever exceed 66⅔ cents on the $100. But the increase in the expenses of government was foreseen, and Art. V, sec. 6, reads as follows: "The taxes levied by the commissioners of the several counties for *county purposes* . . . shall never exceed the *double of the State tax except* for a *special purpose,* and *with the special approval* of the General Assembly." Without this last provision the county governments throughout the State from time to time would have ceased operations, for the margin between the taxation for State purposes and 66⅔ cents would hardly permit a single county in the State, at the present time, to pay its current expenses, with the result that the necessary county institutions would cease to exist, the jurors and the expenses of the courts would go unpaid, and all other necessary expenses, to the extent that county paper would sell at a heavy discount. Yet these would have to be paid at some future day, at a vast loss, because a large quantity of depreciated county scrip would necessarily be issued to carry on the county government.

For this reason, the Constitution, Art. V, sec. 6, permits the commissioners of the county to levy taxes in excess of the 66⅔ cents "for a special purpose and with the special approval of the General Assembly."

This has been done for years and for nearly every county in North Carolina, as it has been done for Bladen County by the above chapter 101, Public-Local Laws 1917. For "other than necessary expenses" no county can levy a tax without the approval of a popular vote. Const., Art. VII, sec. 7.

These county expenses must be paid some time, and as the county certainly cannot pay its necessary current expenses, with the steadily recurring deficits, some such act as this will have to be passed by the General Assembly in some future year, and if such act will be valid then, why is not this act of 1917 valid? For what reason must the deficit be allowed to grow until some future Legislature shall pass an act, exactly like the one now in question, to permit the payment of the necessary expense of the county? Necessary county expenses is the sole special

purpose for which the General Assembly can give its approval. For any other purpose a vote of the people is necessary.

This act was passed for the special purpose of meeting this deficit and paying the current expenses of the county, which is as much a special purpose as to pay a note incurred for past indebtedness or to build a bridge. *Martin County v. Bank,* at this term, or to make public roads, *Hargrave v. Comrs.,* 168 N. C., 626, and Surry County and Wilkes County cases at this term, or for public schools, *Davis v. Lenoir,* at this term. It is the only method which the commissioners have of raising funds to meet the necessary expenses of the county. It is found as a fact that it was necessary to levy this tax to meet the necessary expenses of the county.

The deficit was caused by matters over which the commissioners had no control. If the General Assembly, by this act, had power to authorize the necessary special tax of 15 cents for the schools, it has the same power to authorize the levy of a special tax of 5 cents to pay the deficit in the county revenue as a special purpose. This act specified and authorized the levy of the 15 cents for the schools and the 5 cents for the other necessary county expenses.

*Cui bono* permit the deficit for necessary expenses to run up, thus requiring the issue of county scrip at a heavy depreciation, and then permit the aggravated deficit to be collected by exactly such act as this by styling that a special purpose when the General Assembly has authorized this levy of 5 cents for current expenses as a special purpose? John Randolph said good finance and honesty required government to "Pay as you go."

The Const., Art. V, sec. 6, allowing the county commissioners "for county purposes to levy in excess of double the State tax by the special approval of the General Assembly" is an absolute nullity, if such permission does not allow the county and State tax combined to exceed 66⅔ cents, for it has been many a year since the State tax was less than 22⅓ cents. For years every tax for county purposes authorized by the special approval of the General Assembly, without a vote of the people, has necessarily been to exceed the 66⅔ cents limitation. The summary as to the constitutional provisions in regard to taxation is thus laid down in *Herring v. Dixon,* 122 N. C., 420.

1. For necessary expenses, the county commissioners may levy up to the constitutional limitation without a vote of the people or legislative permission.

2. For necessary expenses, the county commissioners may exceed the constitutional limitation, by special legislative authority, without a vote of the people. Const., Art. V, sec. 6.

3. For other purposes than necessary expenses, a tax cannot be levied ·either within, or in excess of, the constitutional limitation except by vote of ·the people under special legislative authority.   Const., Art. VII, sec. 7.

The above summary and analysis first laid down in *Herring v. Dixon,* 122 N. C., 420, has been quoted verbatim and incorporated in *Tate v. ·Comrs., ib.,* 815; *Smathers v. Comrs.,* 125 N. C., 488; *Cotton 'Mills v. Waxhaw,* 130 N. C., 298; *R. R. v. Comrs.,* 148 N. C., 251, and *Pritchard ·v. Comrs.,* 160 N. C., 477.

In Connor and Cheshire on Const., p. 281, it is said: "The equation and limitation placed upon taxation by Art. V, sec. 1, has no application to taxes levied hereunder for a special purpose, when levied with the special approval of the General Assembly," citing *Board of Education v. Comrs.,* 137 N. C., 310; *Jones v. Comrs.,* 107 N. C., 248; *Street v. Comrs.,* 70 N. C., 644; *R. R. v. Holden,* 63 N. C., 410; *R. R. v. Comrs.,* 148 N. C., 220.   This has always been the necessary, and, indeed, the only resource when a county has gotten in debt for necessary expenses. There is no other way for the county to redeem its credit.   This deficit was for the necessary expenses of the county, which not being able to levy over 19 cents by reason of the State tax of 47⅔ cents could not pay the necessary expenses of the county unless allowed by the Legislature under Art. V, sec. 6, to exceed 66⅔ cents limitation.

The tax here in question is authorized for a· special purpose "to provide for any deficiency in the necessary expenses and revenue of said ·respective counties," and received the special approval of the General Assembly, chapter 101, Public-Local Laws 1917.   This levy, therefore, is exactly within the constitutional authority of the General Assembly. Art. V, sec. 6.

In *Guire v. Comrs.,* 177 N. C., 518, *Allen, J.,* quoted from the above analysis in *Pritchard v. Comrs.,* and said: "The county may contract a debt and *exceed the limitation on taxation for necessary expenses with the approval of the General Assembly,* with or without a vote of the ·people as the General Assembly may determine," and *Walker, J.,* in *Parvin v. Comrs.,* 177 N. C., 508, said that the General Assembly may authorize the county to exceed the constitutional limit upon taxation to pay the interest on, or to create a sinking fund for, bonds issued for ·public roads, with the approval of the Legislature, without a vote of the people, "this being a necessary county expense."   Both .these decisions ·were at the succeeding term after the *Cherokee case,* and necessarily overruled it.

. If the special approval of the General Assembly is sufficient to allow ··the county (as held in the *Parvin case*) to exceed 66⅔ cents to pay .interest on past indebtedness, or as in the *Martin County v. Bank,* at this

term, to build a bridge, and in the *Lenoir County case* for schools, and in the *Surry County* and *Wilkes County cases,* also at this term, to provide for public roads, the Legislature could certainly authorize the county of Bladen in this case to levy 5 cents in excess of such limitation "to provide for a deficiency in necessary county revenue and expenses."

Any limitation in Art. V, sec. 1, whether it is 66⅔ cents, or not to exceed "double the State tax," is subject to the permission of the General Assembly, whenever that body shall adjudge that it is necessary for the county to exceed that limit "for necessary county purposes," else Art. V, sec. 6, is an absurdity and a nullity—without any meaning whatever.

The result of holding invalid the act of the Legislature, which authorizes the levy of this 5 cents per $100 for the special purposes of meeting necessary county current expenses, will be the return to this railroad company of $533.04, and the court costs, which will be added to the deficit while other taxpayers have paid their *pro rata.* Next year this sum will be added to the burdens of all the other taxpayers who have had no return made to them of the taxes they have paid, and the railroad company, probably the largest property owner in the county, will thus obtain from year to year a special exemption of 5 cents per hundred on all its property, which burden will be added to the taxes ultimately paid by all the taxpayers in taking up the deficit.

It is true that the same ruling, as in this case, was made in *R. R. v. Cherokee,* 177 N. C., 87 (in which case, also, I dissented), with exactly the same result that the Southern Railway Company, with property in the county assessed at $1,024,000, recovered $275, and a heavy bill of costs, which had to be defrayed by the other taxpayers of the county, thus increasing the deficit, which, piling up, must sometimes be paid by virtue of an exactly similar act, whenever the deficit shall be large enough to entitle it to be called by the courts "a special purpose." The General Assembly adjudged the levy to prevent a deficit in Cherokee and to prevent this deficit in Bladen, "a special purpose." It is certainly as much a special purpose for the General Assembly to authorize *a levy for necessary county expenses to prevent a deficit* as later to authorize a levy *to pay off a deficit* largely aggravated by the *nonpayment of depreciated county paper.*

There is no other means by which the county can pay its current expenses except by the levy of taxation, and if it cannot exceed, as commonly held, 66⅔ cents, without the special approval of the General Assembly, the protection contemplated by the Constitution is that the Legislature will not give its approval unless it deems the special purpose a necessary one, and its decision as to that should be binding on the Court.

It may not be amiss to call attention to the fact, which *Mr. Justice Walker,* in *R. R. v. Cherokee,* 177 N. C., 93, has already done, that the Constitution, as written, does not limit State and county taxation to 66⅔ cents, though the Court has often so said. The language of the Constitution, Art. V, sec. 6, is as follows: "The taxes levied by the commissioners for county purposes . . . shall never exceed *the double the State tax,* except for a special purpose, and with the special approval of the General Assembly." *Walker, J.,* in *Collie v. Comrs.,* 145 N. C., at pages 181 and 182, has elaborated the same statement in a conclusive demonstration, and has repeated the same in *Moose v. Comrs.,* 172 N. C., 452.

As the State taxation authorized by the Laws of 1917, ch. 231, sec. 3, was 47⅔ cents on $100, the county would be authorized to levy, without requiring legislative permission, "not to exceed double that sum," *i. e.,* 95⅓ cents, besides the 15 cents for schools authorized by said chapter 101, Laws 1917, which is herein construed to be a special purpose. This would more than validate this 5 cents levy, to prevent a deficit for necessary county purposes.

For a long time it was held that schools were not a necessary purpose. Now, by reversal of former opinions, *Collie v. Comrs.,* 145 N. C., 170, they are held, and very properly a necessary expense, but it is a strange condition that those other expenses, which have always been held to be necessary, are now held to be of such inferior dignity that the Legislature cannot authorize the levy of a special tax to pay them.

It is true that the Constitution, Art. V, sec. 1, provides that the General Assembly may levy a capitation tax on the poll, which shall be equal to property valued at $300 in cash, and that the State and county capitation tax shall never exceed $2 on the head, but that is a limitation on the capitation tax which the Court has repeatedly held does not apply to the restriction of the property tax when it is necessary to exceed 66⅔ cents.

Besides, Art. V, sec. 1, provides that "the State and county capitation tax combined shall *never* exceed $2 on the head," and by sec. 2, "shall be applied to the purpose of education and the support of the poor."

In *R. R. v. Comrs.,* 148 N. C., 220, and *ib.,* 248, the Court held that this must be observed, and that the tax on the poll for State and county purposes "shall *never* exceed $2," and could be applied only to "education and the support of the poor," and added, p. 245: "This *question cannot again arise."* Since then, the Court has overruled, by a vote of 3 to 2, in *Moose v. Comrs.,* 172 N. C., 419, those decisions. Why should the protection that the poll tax "shall *never* exceed $2" on each poll, and can only be applied to "education and the support of the poor," be treated as invalid, while the corporations and other large property holders in the State are entitled to have taxes refunded to them if in excess of 66⅔

cents (though there is no such limit in the Constitution), even when
authorized by the special approval of the General Assembly for the pur-
poses of defraying the necessary expenses of running the county govern-
ment?

The ruling of the Court that "the State and county property tax com-
bined should not exceed 66⅔ cents" is not in the Constitution, and began
at a time when the State taxes did not exceed one-third of 66⅔ cents, and
though the county levied double the State tax, the whole levy ordinarily
would not exceed 66⅔ cents. When the State taxes for necessary pur-
poses steadily mounted year by year to 22 cents, and then above, till now
they reach 47⅔ cents, the always narrowing margin between such levy
and 66⅔ cents did not leave enough to defray county expenses, and for
that reason, at probably every session, under authority of Art. V, sec. 6,
the Legislature has given its special approval to some counties, as in this,
chapter 101, Public-Local Laws 1917, to exceed the 66⅔ cents by levying
a special tax for the special purpose of defraying necessary county
expenses. This has now become a standing necessity in probably nearly
every county in the State.

The master said, "Ye make the Word of none effect through your
*tradition," Mark 7:13. The Constitution is the "Word" which abides.
The word of the Constitution, as it is written, and abides with us, and
can be read by all men, should govern, and not the decisions made by
the courts, which can be and are changed by them at will, and should be
changed always if in conflict with the Constitution.

In this case the legislative special approval of this levy of 5 cents for
necessary county expenses is in exact accordance with the Constitution,
and is in conflict, it seems, with no decision other than *R. R. v. Cherokee,
supra.* In the later case of *Parvin v. Comrs.,* 177 N. C., *Walker, J.,*
holds (at p. 511), and also *Allen, J.,* in *Guire v. Comrs.,* 177 N. C., at
p. 518, that the limitation in Art. V, sec. 1, can be exceeded for necessary
county purposes by permission of the Legislature under Art. V, sec. 6.

In the Constitution, as it is actually written, there is *no restriction on
the property tax,* State and county, for necessary purposes to 66⅔ cents
on the $100, and when, as is now the case, in probably every county this
will not raise sufficient funds to carry on the county government, the
strict prohibition that the poll tax, State and county combined, can *never*
exceed $2, prevents the Legislature from going beyond that limit on the
poll, but Art. V, sec. 6, empowers the counties to levy property taxes in
excess of any limitation, with the approval of the General Assembly.

In *Jones v. Comrs.,* 107 N. C., 248, *Merrimon, C. J.,* says: "We are
therefore of opinion that the equation and limitation of taxation estab-
lished by the Constitution, Art. V, sec. 1, applies only to taxes levied for
the ordinary purposes of the State and counties," and this language is

quoted and approved by *Hoke, J.,* in *Perry v. Comrs.,* 148 N. C.; 524, and has been always followed. It means when taxation is beyond $2 on $300, either by legislative approval for "necessary county purposes," or by a vote of the people, the *equation* (as well as the limitation) ceases as to the property tax for the poll tax, by the constitutional guarantee, "can *never* exceed $2 on the poll," and all taxation beyond the limitation in Art. V, sec. 1, must be on property and from other sources of taxation allowed by Constitution, Art. V, sec. 6.

And, finally, for what reason should the county of Bladen be required to borrow money to refund taxes levied and collected for "necessary county purposes" within "double the State tax" (if that is the limit), or by the special approval of the General Assembly, in excess of 66⅔ cents (if that is the constitutional limitation)? In either case, the county debt incurred for its necessary expenses must be paid some day by a tax levy.

If the refund is made only to those suing, the plaintiffs get an exemption not allowed to all others. If the refund is to all taxpayers alike, then there is the useless return of money to be again collected another year to pay the note for money borrowed and interest.

The true remedy is by an injunction against the levy and collection of taxes, if it can be shown that it is not required "for necessary county purposes," or exceeds the limitation without "the special approval of the General Assembly."